No. 81,488

ANGIE HOWELL, *Appellant*, v. DENNIS R. CALVERT, *Defendant*, and KANSAS NEWMAN COLLEGE, INC. *Appellee*, and KIMBERLY J. ROTHLISBERGER, deceased, by and through Diana Rothlisberger, Administrator of the Estate of Kimberly Rothlisberger; and DIANA ROTHLISBERGER, Individually, *Appellant*, v. KANSAS NEWMAN COLLEGE, INC., *Appellee*.

(1 P.3d 310)

Opinion filed March 10, 2000.

*James M. Crowl*, of Dickson & Pope, P.A., of Topeka, argued the cause, and *Judy A. Pope*, of the same firm, was with him on the brief for appellant Howell.

*Robert L. Pottroff*, of Myers, Pottroff & Ball, of Manhattan, argued the cause and was on the brief for appellant Rothlisberger.

*J. Philip Davidson*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Wichita, argued the cause, and *Arlen L. Tanner*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a personal injury and wrongful death case. The only defendant at trial was Kansas Newman College, Inc. (Newman). Two student athletes from Newman were struck from behind by a truck during a mandatory early morning conditioning

run. One athlete, Kimberly J. Rothlisberger, was killed and the other, Angie Howell, was injured. Plaintiffs were Howell and Diana Rothlisberger, Kimberly's mother. Following a 3-week trial, the jury apportioned fault in each case as follows: the athlete 28.6%; the truck driver 46.6%; and Newman 24.8%. The jury awarded $75,075 in total damages to Howell and $255,000 in pecuniary damages to Rothlisberger. (Rothlisberger did not claim nonpecuniary damages.) Plaintiffs appeal, advancing numerous trial errors but focusing primarily on jury instructions concerning the duty owed by Newman to its student athletes.

Our jurisdiction is under K.S.A. 20-3018(c) (a transfer from the Court of Appeals on our motion).

The questions raised on appeal by each plaintiff are:

Angie Howell: (1) Whether the district court erred: (a) in failing to provide a jury instruction on the duty owed by Newman to the plaintiffs, (b) in allowing defense counsel's examination of certain witnesses, (c) in allowing a defense counsel opening statement comment to be made to the jury, and (d) in restricting cross-examination of a defense expert, and (2) whether there was prejudicial jury misconduct.

Diana Rothlisberger: (1) Whether the district court erred: (a) in instructing the jury on her damages claims, (b) in restricting Rothlisberger from cross-examining a witness about certain deposition testimony, and (c) in allowing deposition testimony to be read into the record without a showing that the truck driver was unavailable, and (2) whether defense counsel's alleged violation of a motion in limine was reversible error. Rothlisberger also joined in the issues raised by Howell.

Finding no error, we affirm.

## FACTS

Angie Howell and Kimberly J. Rothlisberger attended Newman on basketball scholarships. As members of the basketball team, they were required to attend and participate in mandatory physical conditioning sessions. One of these mandatory sessions was a 2.7 mile run on Friday mornings. The team agreed to have its Friday session in the morning to free up Friday afternoons. The route

designated by the head coach was one used by many Newman athletic teams. The coach was aware that portions of the route were heavily trafficked and without sidewalks.

One member of the team injured her ankle by stepping in a pothole while running the prescribed route in the early morning darkness one week earlier. Howell and Rothlisberger asked the assistant coach if they could run a different route. The assistant coach said that they must run the traditional route. The team began the run at 6:30 a.m. on September 15, 1995. No one from the coaching staff accompanied the runners. At approximately 6:46 a.m., Howell and Rothlisberger were hit from behind by a truck driven by Dennis Calvert. The two were side-by-side, with Howell nearest the curb. Howell was struck by the truck's passenger side mirror. Rothlisberger, who sustained the major impact, was killed. Passing motorists testified it was too dark to see the runners in the road.

Plaintiffs sought damages for personal injuries and wrongful death. Calvert settled with plaintiffs. The jury was not informed of the amount of the settlement. Additional facts will be added as they become relevant.

## DISCUSSION
### The Duty Instruction

During trial there was much disagreement about the jury instruction on the duty owed by Newman to the athletes. Plaintiffs argued Newman owed special duties involving supervision, instruction, warning, a safe place or premises for the required activity, and safe equipment. Newman argued that it owed a general duty of ordinary care. The district court found no precedent to support the existence of the special duties advocated by plaintiffs. According to the district court, Newman owed the athletes a duty of ordinary care. The district court determined it would give an instruction based on the Pattern Instructions for Kansas (PIK) Civ. 3d 103.01. By inadvertence, PIK Civ. 3d 103.01 was omitted from the instructions read to the jury. As a result, the jury was instructed on the athletes' duties as pedestrians and Calvert's duty as a driver,

but not that Newman owed a duty of ordinary care to Howell and Rothlisberger.

Although admitting a mistake, the district court declined to order a new trial. The district court reasoned that the jury understood that Newman owed a duty of care to the athletes because: (1) the instructions included allegations that Newman breached specific duties owed to the athletes, and (2) the jury found Newman 24.8% at fault.

Plaintiffs advance two grounds for district court error regarding duty: (1) failing to instruct on duty in general, and (2) refusing to give a special duty of care instruction. Plaintiffs argue the errors prejudiced their cases and entitle them to a new trial. We disagree.

We first take up the failure to instruct on a general duty. Neither plaintiff objected to the absence of PIK Civ. 3d 103.01 before the jury retired to deliberate. Plaintiffs have not preserved this issue for appeal. See K.S.A. 60-251(b); *Hawkinson v. Bennett*, 265 Kan 564, Syl. ¶ 5, 962 P.2d 445 (1998).

Plaintiffs' second jury instruction argument arises from a claimed special relationship between Newman and the athletes. According to plaintiffs, this special relationship created a duty to provide adequate: (1) supervision, (2) instruction, (3) warning, (4) and equipment, and (5) to provide a safe place/premises for the required activity. Plaintiffs acknowledge that Kansas has not recognized a special relationship between a college and its student athletes. However, plaintiffs invite us to do so and hold Newman to these five specific duties, citing *Nero v. Kansas State University*, 253 Kan. 567, 861 P.2d 768 (1993). We decline the invitation.

*Nero* involved a sexual assault in a Kansas State University (KSU) dormitory. KSU officials allowed Ramon Davenport, an alleged rapist, to reside in a co-ed residence hall despite Davenport's impending criminal trial for rape of another KSU student. Shana Nero, the victim, sued KSU alleging a "special relationship" between herself and KSU arising out of the dormitory landlord-tenant relationship. We declined to hold the university-student relationship itself imposes a duty on universities to protect students (an *in loco parentis* duty). 253 Kan. at 580. *Nero* holds that a university

has a duty to regulate and supervise foreseeable dangers and activities occurring *on* its property. 253 Kan. 567, Syl. ¶ 5.

Plaintiffs argue that the facts here show that Newman exercised a degree of control over the athletes that would allow an extension of the duties espoused in *Nero*. Plaintiffs arguments are misdirected. They present the issue of Newman's duty as a question of law. Plaintiffs have confused duty with breach. The many cases cited by plaintiffs involve the question of whether a duty exists *at all*. Newman's duty of care owing to the athletes was not contested in the district court. Newman conceded it owed a duty to the athletes and the case was submitted to the jury. Nonetheless, plaintiffs devote a majority of their briefs urging us to find that a special relationship existed between the athletes and Newman.

Plaintiffs' confusion between duty and breach leads them to argue that they were entitled to a jury instruction that Newman breached specific duties (supervision, safe place, etc.). This contention is also misdirected. The pattern jury instructions do not endorse what plaintiffs suggest. Negligence is defined by PIK Civ. 3d 103.01:

"Negligence is the lack of ordinary care. It is the failure of a person to do something that an ordinary person would do, or the act of a person in doing something that an ordinary person would not do, measured by all the circumstances then existing."

PIK Civ. 3d 103.01 was requested by Newman, but inadvertently omitted by the district court. However, the exact language of PIK Civ. 3d 103.01 was included in the comparative fault instruction.

Plaintiffs' contentions of Newman's specific breaches reached the jury. The district court instructed on plaintiffs' contentions. We do not find error in the district court's refusal to give plaintiffs' requested specific duty instructions.

### Juror Misconduct

Plaintiffs moved for a new trial alleging a number of instances of misconduct by the jury.

Howell contends that the jury disregarded the district court's instruction on allocating fault. The jury found Howell and Rothlisberger both were 28.6% at fault. Howell argues misconduct in the

jury's allocation because she claims she exercised more care than Rothlisberger. According to Howell, the jury could not reasonably assign identical percentages of fault to each athlete. We do not agree. The jury's assessment of identical fault between the two athletes does not show that it failed to follow the court's directions. The conduct of both Calvert and Newman was the same as to each athlete. The district court did not abuse its discretion in denying Howell's motion for a new trial on this issue. See *Noel v. Pizza Management, Inc.*, 258 Kan. 3, 15, 18, 899 P.2d 1013 (1995).

Rothlisberger asserts three separate allegations of jury misconduct: (1) a juror said that the jury had reached a decision before the close of evidence and before hearing the district court's instructions; (2) a juror remarked that Howell was a "faker" and this would not be another "McDonald['s] case"; and (3) a juror conducted an "investigation" of early morning light levels. We address each of the three allegations.

When the judge's assistant went to the jury room, one member of the jury remarked that the jurors did not need to hear any more arguments or instructions, they knew what to do. The assistant reported what she overheard to the judge, who informed counsel. The district court concluded: (1) the remark was a poor attempt at humor from a tired juror who had spent 3 weeks hearing the case, (2) the jury took time in its deliberations (4.5 hours), and (3) therefore, the jury did not make its decision before the close of evidence. We agree with the district court. Rothlisberger does not argue that the alleged misconduct prejudiced her case. Her argument fails. See *Pike v. Roe*, 213 Kan. 389, 392, 516 P.2d 972 (1973) ("It is not the misconduct of jurors alone which necessitates a new trial but misconduct which results in prejudice to a litigant.").

We next consider the remarks of a juror who reportedly said that Howell was a "faker" and this would not be another "McDonald['s] case." First, Rothlisberger is not in a position to argue prejudice on behalf of Howell (who does not join in this specific argument). Second, the affidavit supporting these statements is hearsay. The affiant, a nonjuror, simply claims to have "overheard" the statements. The district court did not err in overruling the motion for a new trial based on the hearsay affidavit. See *State, ex. rel., v. Hall,*

178 Kan. 489, Syl. ¶ 1, 289 P.2d 781 (1955). Third, if a juror or jurors concluded that Howell was a "faker" and consequently awarded her less damages, we cannot find jury misconduct. We may not invade the thought processes of the jury to test the validity of a verdict. K.S.A. 60-441; *Merando v. A.T. & S.F. Rly. Co.*, 232 Kan. 404, Syl. ¶ 2, 656 P.2d 154 (1982).

Finally, we turn to the investigation of light levels. An affiant alleges that a juror said she observed early morning light levels, and it was not as dark as plaintiffs had argued. Rothlisberger contends that the juror's investigation raised questions about the plaintiffs' theory of the case and would have affected the percentage of fault allocated to Newman. A juror's independent investigation can be grounds for a new trial. See *Christopher & Son v. Kansas Paint & Color Co.*, 215 Kan. 185, 198, 523 P.2d 709 (1974), *modified on rehearing* 215 Kan. 510, 525 P.2d 626 (discussing several cases of jury investigation). However, Rothlisberger's argument here fails because the allegations are hearsay and a district court is not required to grant a new trial based on hearsay statements. *Hall*, 178 Kan. at 489, Syl. ¶ 1. Rothlisberger did not present sufficient evidence of this allegation for us to conclude that the district court abused its discretion in denying a new trial.

## Defense Counsel's Examination

Plaintiffs next assert that the district court erred when it allowed Newman to question Calvert about shouting profanities after his truck struck the athletes. Plaintiffs must show an abuse of discretion. *Enlow v. Sears, Roebuck & Co.*, 249 Kan. 732, Syl. ¶ 9, 822 P.2d 617 (1991). According to plaintiffs, Newman elicited a prejudicial and inflammatory remark from Calvert to minimize its fault, without having any basis for the question. The exchange went as follows:

"Q. [NEWMAN'S COUNSEL]: You would dispute testimony from one of the runners that states that you got out of your truck and said, 'what the fuck were you doing in the road?' Is that true, you would dispute that?

"MR. POTTROFF: I'm going to have to object to this line of questioning. Where he just brings in statement from anywhere unless they're in the record. Cross examining one witness on what another witness may say I think is inappropriate.

. . . .

"THE COURT: I'll overrule based on counsel having good faith belief that the evidence can be produced.

"THE WITNESS: I do not recall saying that. Yes, I would dispute it."

Plaintiffs contend that the admission of this question and answer require a new trial because Newman never presented testimony to back up the alleged statement. Plaintiffs make this argument even though they were aware one runner, Shelly Christopherson, reported hearing the statement. Later in the trial Rothlisberger's counsel admitted, "For the record, we found the statement, too, and we still think it has no probative value." After an unsuccessful attempt to have another runner testify that Christopherson reported the statement, the district court prohibited counsel from further reference to the statement. Plaintiffs' argument fails. The prejudice, if any, would go to Calvert, not the plaintiffs.

### Defense Counsel's Comments

Plaintiffs complain the district court erred by allowing defense counsel's opening statement comment that Calvert did not have his lights on before the accident. Newman responds that Christopherson would have testified to that effect; therefore, it had a reasonable belief that testimony would support the opening statement. It is unclear why Christopherson was not called to testify.

While we do not condone Newman's decision not to call Christopherson, there is no reversible error here. The fact at issue was both relevant and provable. Christopherson said in her written statement that Calvert's lights were not on when he hit the athletes. Her statement was known by plaintiffs before trial. Plaintiffs fail to specify how counsel's comment prejudiced their cases. Again, the prejudice, if any, goes to Calvert, not plaintiffs. Furthermore, plaintiffs did not preserve this issue for appeal. Howell states in her brief that the statement in question was made over objection from counsel. A review of the record reveals no objection.

### The Cross-examination of a Defense Expert

Plaintiffs take issue with the district court's refusal to allow either plaintiff to cross-examine a defense witness concerning his website. Neither plaintiff raised this issue in her motion for a new trial.

Issues not raised before the district court cannot be raised on appeal. *Ripley v. Tolbert*, 260 Kan. 491, 513, 921 P.2d 1210 (1996).

### Instructions on Rothlisberger's Damages

Rothlisberger argues the jury instructions on damages were deficient in two ways. First, the district court erred in supplying an instruction on nonpecuniary loss, when Rothlisberger waived recovery for nonpecuniary loss and in defining pecuniary loss. Second, the district court erred by refusing to allow her to present evidence on a "lost investment" theory of damages.

The district court has a duty to properly instruct the jury on a party's theory of the case. If the instructions are substantially correct, and the jury could not reasonably be misled by them, the instructions will be approved on appeal. *Hawkinson v. Bennett*, 265 Kan. 564, 577-78, 962 P.2d 445 (1998) (quoting *Noel v. Pizza Management, Inc.*, 258 Kan. 3, 12, 899 P.2d 1013 [1995]).

Rothlisberger complains that the district court erred in rejecting her proposed damage instruction on pecuniary loss. Her proposed instruction included eight types of losses (such as "care and nurturing, aid and assistance, counsel and advice"). Rothlisberger argues that these items of damage are pecuniary (economic) in nature, and the district court's chosen instruction was both erroneous and misleading.

Initially, Newman argues that plaintiff has waived this issue by failing to object to the damage instruction given by the district court. The district court's instruction follows PIK Civ. 3d 171.32. Reviewing the record, it is difficult to discern whether a proper objection was lodged, and, if so, the grounds for that objection. What is clear is that Rothlisberger did not object at trial to the inclusion of the first paragraph on nonpecuniary damages. This first paragraph, following PIK Civ. 3d 171.32, defined nonpecuniary loss. It then stated that Rothlisberger was not claiming nonpecuniary loss in this case. Rothlisberger argues it was error to include this paragraph because she was not seeking nonpecuniary damages and its inclusion probably confused the jury. Rothlisberger did not raise the issue of jury confusion over the nonpecuniary damage paragraph in her motion for new trial. Rothlisberger simply argued

that her proposed instruction correctly defined pecuniary loss and should have been given to the jury.

Rothlisberger's argument concerns the definition of pecuniary damages in Kansas. Considering the ambiguities in the transcript and that Rothlisberger raised the issue of defining pecuniary damages in her motion for a new trial, we address her pecuniary damages contention.

PIK Civ. 3d 171.32 Notes on Use state that there is no distinguishable difference between the terms pecuniary and economic. The district court chose to use the word pecuniary. PIK Civ. 3d 171.32 categorizes and defines economic and noneconomic losses. Pecuniary loss includes: loss of services, attention, filial care, and protection. Nonpecuniary loss includes: (a) mental anguish, suffering, or bereavement, and (b) loss of society, comfort, or companionship.

Rothlisberger sought an instruction on pecuniary loss that included damages for:

"(a) Loss of care and nurturing.
"(b) Loss of aid and assistance.
"(c) Loss of counsel and advice.
"(d) Loss of the value of a continued family relationship through the existence of a living child.
"(e) Loss of enjoyment and entertainment.
"(f) Loss of protection.
"(g) Loss of services.
"(h) Loss of attention."

Without explicitly saying so, Rothlisberger advocates a change in the law. "Continued family relationship" and "loss of enjoyment and entertainment" are strikingly similar to loss of society, comfort, or companionship—nonpecuniary damages. By requesting that the pecuniary damage instruction include those items, Rothlisberger requested instruction goes beyond the traditional definition of pecuniary loss.

The jury instruction given by the district court for Rothlisberger's damages follows PIK Civ. 3d 171.32 "Wrongful Death of A Child." The instruction included a claim for "Loss of services, attention, care, protection, and advice and counsel." This instruction

is consistent with PIK Civ. 3d 171.32 and our case law. See *Wentling v. Medical Anesthesia Services,* 237 Kan. 503, 513, 701 P.2d 939 (1985); *Cerretti v. Flint Hills Rural Electric Co-op Ass'n,* 251 Kan. 347, 365, 837 P.2d 330 (1992). The district court did not err in rejecting Rothlisberger's instruction.

With respect to the lost investment theory of damages, Rothlisberger argues that the district court improperly excluded it as a basis for recovery. Under the lost investment theory, Rothlisberger sought to recover the time and money invested in the rearing of her deceased daughter. Rothlisberger cites no authority for her position that such damages are allowed in Kansas.

Damages in a wrongful death action are defined by K.S.A. 1999 Supp. 60-1903. Under 60-1903, there are three categories of damages: (1) nonpecuniary; (2) expenses for care of the deceased caused by the injury; and (3) pecuniary. Pecuniary or economic loss is loss of: (a) services, attention, care, and protection; (b) loss of earnings; and (c) funeral expenses. PIK Civ. 3d 171.32. The lost investment of infant care, clothing, support, and education of the deceased child do not fit into any of the 60-1903 categories. Rothlisberger's argument is inconsistent with 60-1903 and against the clear weight of authority. See the following cases rejecting the lost investment theory: *Wallace v. Woods,* 271 N.E.2d 487, 490-93 (Ind. App. 1971); *Selders v. Armentrout,* 190 Neb. 275, 280, 207 N.W.2d 686 (1973); *Danculovich v. Brown,* 593 P.2d 187, 196 (Wyo. 1979); see also *Gravley v. Sea Gull Marine, Inc.,* 269 N.W.2d 896, 901 (Minn. 1978) ("A child . . . is not a monetary investment.") The district court did not err in refusing to instruct on the lost investment theory.

## Deposition Testimony

Rothlisberger next claims she was denied the opportunity to use deposition testimony. Control of evidence and cross-examination is within the sound discretion of the district court. See *Enlow,* 249 Kan. at 732, Syl. ¶ 9. During the testimony of the athletic director at Newman, Rothlisberger sought to cross-examine her about Newman's methods of recruiting student athletes with the deposition

testimony of another Newman employee. Newman objected and the use of the deposition was apparently denied.

Rothlisberger did not adequately brief this issue. See *Pope v. Ransdell*, 251 Kan. 112, 119, 833 P.2d 965 (1992). Her brief contains no explanation of how the disputed testimony was to be used and no claim of prejudice from its exclusion.

We find, after a search of the record, that Rothlisberger later attempted to make some record on this issue. Apparently, Newman's vice president of finance gave deposition testimony concerning the purpose of the Newman athletic programs. He indicated Newman profited from the programs. During the cross-examination of Newman's interim athletic director, Rothlisberger asked about the purpose of the athletic program. Unsatisfied with the answer, Rothlisberger attempted to refresh the witness' recollection with the deposition testimony of the vice president of finance. The district court did not allow this and later explained that Rothlisberger was free to ask about profit motivations and did so. The district court did not exclude the deposition for all purposes. There is no error in the district court's ruling.

Rothlisberger also contends error in allowing Newman to use portions of Calvert's deposition testimony. Rothlisberger claims prejudice because she was unable to cross-examine Calvert concerning the accuracy of statements used to impeach her expert.

At trial, Newman used Calvert's deposition testimony twice. First, it was used to impeach Calvert's testimony. Newman also used it to cross-examine Rothlisberger's expert witness. Rothlisberger complains of this second use. A review of the transcript (which Rothlisberger fails to cite) shows that Newman handed Calvert's deposition to the expert to refresh the expert's recollection of Calvert's testimony on certain fact issues. The deposition was not read into the record. It was merely used to refresh the expert's recollection of facts the expert relied upon in forming the basis of his opinions. In addition, Rothlisberger did not make a proper objection to the continued line of questioning. We find no abuse of discretion on the deposition contention.

## The Motion in Limine

Rothlisberger last complains of prejudicial error when Newman asked Calvert about a prior felony conviction for robbery by fear. A motion in limine precluded Newman from asking, *inter alia*, about Calvert's past illegal drug use and drug convictions, illegal weapons convictions, and traffic citations. The motion in limine did not cover Calvert's prior felony conviction for robbery, There was also no objection to this question during trial. The argument fails.

Affirmed.