No. 87,033

STATE OF KANSAS, *Appellee*, v. BENJAMIN L. ROGERS, *Appellant*.

(78 P.3d 793)

Opinion filed October 31, 2003.

*Stephen B. Chapman*, of Olathe, argued the cause and was on the brief for appellant.

*Richard G. Guinn*, assistant district attorney, argued the cause, and *Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J: In December 1999, the State charged Benjamin Rogers with burglary, theft, and two counts of felony murder for his involvement in activities arising out of a break-in of an Olathe motorcycle dealership. Following a 4-day trial, a jury convicted Rogers and his codefendant, Kenneth Kunellis, of all charges. The district court sentenced Rogers to 2 terms of life in prison, along with 12 months for the burglary and 6 months for the theft, all terms concurrent with each other. This is his direct appeal seeking reversal of his felony-murder convictions. Our jurisdiction is under K.S.A. 22-3601(b)(1), a maximum sentence of life imprisonment imposed.

The issues presented by Rogers on appeal, and this court's accompanying holdings, are as follows:

1. Does the evidence support the jury's finding that Rogers is guilty of felony murder occurring in the commission of or flight from a felony theft? Yes.
2. Did the district court deprive Rogers of due process of law and his theory of defense by bifurcating theft into two crimes: (1) theft by obtaining and (2) theft by exerting control? Yes.
3. Did the district court deny Rogers due process of law and his theory of defense by refusing to instruct the jury that felony murder does not include a killing which occurs outside the commission or flight from the underlying crime? No.

Accordingly, we reverse his convictions for theft and felony murder and remand for a new trial.

## FACTS

On the evening of December 11, 1999, Benjamin Rogers (Ben) was with friends Kenneth Kunellis, Kris Kunellis, and his cousin, Aaron Rogers. After deciding to break into a Suzuki motorcycle dealership in Olathe, they got into Ben's passenger van and began searching for a vehicle suitable to carry stolen motorcycles. They quickly found a truck with a 14-foot enclosed cargo box at a used car dealership along I-435 at Front Street in Kansas City, Missouri. After Ben hot-wired the truck, Aaron drove Ben's van and led the group to the Olathe dealership.

When they arrived, Ben drove the stolen truck to the side of the dealership, parked, and began searching for the telephone lines that Aaron had told him would disable the business' alarm system when cut. While Ben cut the phone lines, the Kunellis brothers remained in the stolen truck, and Aaron served as a lookout in Ben's van.

After Ben completed his task at the rear of the building, he returned to the truck, pulled back onto the street, and backed up through the parking lot to a display window. He then walked to the back of the truck and picked up the sledge hammer. When the Kunellis brothers lifted the truck's rear sliding door, Ben smashed the display window.

The plan was to load up as many motorcycles as possible in a certain period of time, but Ben's delay in locating and cutting the phone lines limited the time available. Additionally, they had unforeseen difficulties loading the heavy motorcycles. After loading only three, Ben told the others it was time to go. As Ben drove the truck, the Kunellis brothers remained in the cargo area managing the motorcycles and holding the sliding rear door closed.

Shortly before the group left, Reuben Feuerborn had driven into the parking lot and noticed a cargo truck backed up to a building. After the truck left, Feuerborn's wife noticed the front window of the dealership had been smashed, so Feuerborn called 911. Feuerborn informed the police of the truck's description, location, and direction of travel, and began to drive in the same direction as the departed truck.

Olathe police dispatch records indicate the Feuerborns first reported the crime at 10:58 p.m. Two minutes later, after the Feuerborns regained sight of the truck, they informed the police it was about to enter northbound I-35. At 11:04 p.m., Officer Allen called for assistance and reported he was following the truck northbound at 119th and I-35. Once Allen was joined by Lenexa Police Officer Trevino at 11:07 p.m., he activated his emergency lights and attempted to stop the truck.

Ben testified he was unaware of any pursuers until Officer Allen activated his lights at about 97th Street. Ben then exited northbound I-35 at 87th Street and entered southbound 69 Highway, traveling against traffic to discourage pursuers. The truck then collided with a Toyota Camry occupied by Rick Sloan and his fiance Simone Sanders. Sanders was killed instantly, and Sloan received injuries which would prove fatal hours later.

## ANALYSIS

Issue 1: *Does the evidence support the jury's finding that Rogers is guilty of felony murder?*

Rogers first argues that the evidence does not support the jury's finding that he is guilty of felony murder occurring in the commission of or flight from a felony theft. Accordingly, he argues his conviction should be reversed. The resolution of this issue is con-

trolled by *State v. Kunellis*, 276 Kan. 461, 78 P.3d 776 (2003). There we held that when viewing the identical evidence in the light most favorable to the State, we were convinced that a rational factfinder could have found Rogers' codefendant, Kunellis, guilty of felony murder beyond a reasonable doubt, *i.e.*, that the deaths occurred during the defendants' joint flight from the theft. Rogers' argument therefore has no merit.

Issue 2. *Did the district court deprive Rogers of due process of law and his theory of defense by bifurcating theft into two crimes: (1) theft by obtaining and (2) theft by exerting control?*

Rogers next argues that the district court deprived him of due process of law and his theory of defense by bifurcating theft into two crimes: (1) theft by obtaining and (2) theft by exerting control. This claim, as explained in his brief and as articulated during oral argument, essentially states that the district court's jury instructions, together with the State's closing arguments that interpreted those instructions, presented the jury with an inaccurate statement of the law of theft, the crime underlying his convictions for felony murder. Accordingly, he argues his convictions should be reversed and his case remanded for a new trial. The resolution of this issue is also controlled by *Kunellis*, where we held the same instructions and the State's remarks were not accurate statements of the law and required reversal and remand for new trial. 276 Kan. at 468.

While we acknowledge Rogers does not expressly appeal his theft conviction, he does argues — in support of his claim that the felony-murder convictions cannot stand — that the crime of theft was incorrectly defined for the jury. A reversal of the theft conviction is required to serve the ends of justice. See *State v. Coleman*, 271 Kan. 733, 735, 26 P.3d 613 (2001).

As in *Kunellis*, this case is reversed and remanded for retrial on the felony-murder and theft charges. As more fully explained there, the jury should be instructed on the "obtaining unauthorized control" definition of theft and should receive no instruction on "exerting unauthorized control" as an option. We note that Rogers' brief appears to admit he committed the elements comprising the crime of theft while denying that the two deaths resulted from his

commission of, or flight from, that crime. Accordingly, as in *Kunellis*, the need for actual retrial on the theft charge may therefore practically have been eliminated. In any event, the jury should also be clearly instructed on the flight element of felony murder pursuant to K.S.A. 21-3401(b) so it may determine if the deaths occurred during the flight from the underlying felony.

Rogers claims the district court committed additional error. This could now be disregarded because of our reversal and remand on previously noted grounds. We address it below, however, to supply guidance because it could arise in a retrial. See *State v. Carter*, 270 Kan. 426, 441, 14 P.3d 1138 (2000).

Issue 3. *Did the district court deny Rogers due process of law and his theory of defense by refusing to instruct the jury that felony murder does not include a killing which occurs outside the commission or flight from the underlying crime?*

Rogers next argues that the district court denied him due process of law and his theory of defense by refusing to instruct the jury that felony murder does not include a killing which occurs outside the commission or flight from the underlying crime. Citing *State v. Fleury*, 203 Kan. 888, Syl. ¶ 2, 457 P.2d 44 (1969), he asserts we "must be able to declare the federal constitutional error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such a belief beyond a reasonable doubt."

He notes the district court's obligation regarding jury instructions, as stated in *State v. Gholston*, 272 Kan. 601, 615, 35 P.3d 868 (2001), *cert. denied* 536 U.S. 963 (2002):

"In a criminal action, a trial court must instruct the jury on the law applicable to the defendant's theories for which there is supporting evidence. When considering the refusal of the trial court to give a specific instruction, the evidence must be viewed by the appellate court in the light most favorable to the party requesting the instruction. [Citation omitted.]"

He also acknowledges this standard cannot be reviewed in isolation, citing *State v. Mims*, 264 Kan. 506, 514, 956 P.2d 1337 (1998), where we stated:

"When reviewing challenges to jury instructions, we are required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case, and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. [Citation omitted.]"

The district court instructed the jury in instruction No. 14 that "[t]ime, distance, *and the causal relationship* between the underlying felony and the killing are factors to be considered in determining whether the killing was done in the commission of or in flight from the burglary or theft." (Emphasis added.) Rogers requested an addition, stating, "[A]nd that would be whether the underlying felony had been done or completed prior to the killing so as to remove [it] from the ambit of the felony murder rule as an ordinary question of fact for you to decide." Rogers also joined Kunellis in requesting additional language, *i.e.*, "If you conclude that the killing did occur during the commission of the underlying felonies, you may find that the defendant was not responsible for the deaths only if you find an extraordinary intervening event superseded the defendant's act and became the sole legal cause of death." In refusing the instruction additions, the court noted:

"The language that the Court has proposed here is straight from [*State v.*] *Hearron*, [228 Kan. 693, 696, 619 P.2d 1157 (1980)]. Language that the defendants have requested in addition to that really says nothing more than a combined application of this instruction and the charging instruction which requires that as element 2, the killing has to be done while in the commission or flight from the underlying felony.

"Instruction 14 simply advises the jury that they're to consider time, distance and the causal relationship as factors in considering whether the killing was done in the commission or flight from the burglary or the theft. These two instructions accomplish, I think, what the defendants have requested. And I think to add anything more to Instruction 14 is duplicative surplusage and added confusion rather than clarifying."

Rogers also asked for the following instruction, which the district court denied as duplicative of the others: "If you should find [name of deceased] was not killed while the Defendant, Benjamin Rogers, was still in the commission of or flight from the crime of burglary or theft, you must return a verdict of not guilty."

The issue of the intervening cause instruction was resolved in *Kunellis* and controls here. See 276 Kan. at 482-84. As for the remaining instructions requested by Rogers and denied by the district court, we agree with that court. Considering the instructions given as a whole, Rogers' requested instructions were not necessary to clarify his point that "the critical choice under the theory of defense is whether the killing occurred outside both the commission and flight from the theft." As mentioned, the jury was charged to consider "[t]ime, distance, and the causal relationship between the underlying felony and the killing are factors to be considered in determining whether the killing was done in the commission of or flight from the burglary or theft." As a general rule, juries are presumed to have followed instructions given by the trial court. *State v. Fulton*, 269 Kan. 835, 842, 9 P.3d 18 (2000). The instructions given properly and fairly state the law as applied to the facts of this case. There is no real possibility that the denial of the requested instructions changed the outcome of the trial or would change the outcome of the retrial. Accordingly, the district court did not err in refusing to give them.

Reversed and remanded for new trial.

ABBOTT, J., not participating.

DAVID S. KNUDSON, J., assigned▪