72

(128 P.3d 426)
No. 93,901

BARBARA ERIXSON, *Appellant,* v. ERNEST OJELEYE, M.D., *Appellee.*

Opinion filed February 17, 2006.

*Fritz Edmunds, Jr.,* of Edmunds Law Office, L.L.C., of Overland Park, for appellant.

*Curtis O. Roggow, Roger W. Warren,* and *Linda S. Skaggs,* of Sanders, Conkright & Warren, LLP, of Overland Park, for appellee.

Before PIERRON, P.J., MARQUARDT and MALONE, JJ.

MALONE, J.: Barbara Erixson sued Akinola Ernest Ojeleye, M.D., for medical negligence. The jury found in favor of Ojeleye. Erixson claims the trial court erred by denying her motion for new trial based on jury misconduct. We affirm.

In February 2001, Erixson sustained an abrasion to her right knee when she fell at work. Due to increased pain, Erixson sought medical attention from Ojeleye the following day. Erixson reported to Ojeleye that the pain was worsening and was radiating up her leg. Ojeleye examined Erixson's knee, wrote her a prescription for Percocet for her arthritis, and redressed her knee. The next day, Erixson had greatly increased pain, had become extremely nauseous and was vomiting, was very weak and uncomfortable, and could not get out of bed. Consequently, Erixson's mother called her regular physician, John C. Gollier, M.D. Dr. Gollier informed Erixson she should call an ambulance and go to the hospital. Erixson was eventually diagnosed with necrotizing fasciitis, an infection that, if it gets into soft tissue and then the bloodstream, produces a systemic illness that is very dramatic, fast paced, and damaging. She eventually had most of her fingers, toes, and part of her left leg amputated as a result of the infection.

Erixson sued Ojeleye. She alleged that Ojeleye's treatment and diagnosis were negligent and fell below the standard of care for a physician. Erixson claims she developed the infection and sustained damages as a direct and proximate result of Ojeleye's breach of duty.

The case proceeded to a jury trial. Several healthcare professionals were seated on the jury without objection, including a veterinarian, a certified EMT, a dentist, and a former emergency and operating room technician. Like most medical negligence cases, the trial boiled down to a battle of expert witnesses. After hearing the evidence and deliberating for approximately 30 minutes, the jury found that Ojeleye was not at fault.

Following the verdict, Erixson filed a motion for new trial on the ground of juror misconduct. Erixson submitted affidavits from her trial counsel, Fritz Edmunds, Jr., and his legal assistant, Larry M. Wright. Both Edmunds and Wright indicated that while speaking with jurors following the verdict, Juror No. 11 stated, " 'The other healthcare professionals on the jury and I talked about what the signs are and how to recognize infection. We just couldn't say *for sure* there was enough for Dr. Ojeleye to see.' " (Emphasis added.)

The trial court conducted a hearing on the motion for new trial. Erixson contended Juror No. 11's statement established prejudicial juror misconduct. She argued the statement proved the jury considered information outside the evidence presented at trial and disregarded the trial court's instructions by applying the wrong burden of proof. In the alternative, Erixson asked the trial court to recall the jury for further inquiry if the court did not find the alleged misconduct warranted a new trial. Ojeleye countered that Erixson had failed to meet her strong burden to prove a new trial was warranted. Ojeleye argued that a new trial could not be ordered based solely upon Erixson's hearsay affidavits from her trial counsel and the legal assistant.

The trial court denied Erixson's motion for new trial and also declined to recall the jury. The trial judge stated:

"I believe that uh, the combined jurors are entitled to use their common knowledge and experience and each may use their knowledge and experience in the jury room.

"The fact that some of the jurors had healthcare training does not require them to forget what they know when they got to the—they go to the jury room."

The trial court also ruled that Juror No. 11's statement "We just couldn't say for sure" failed to indicate that the jury disregarded the court's instruction to apply a preponderance of the evidence standard of proof. Erixson timely appeals.

Erixson claims the trial court erred in denying her motion for new trial based on jury misconduct. She again argues that Juror No. 11's statement indicated that prejudicial jury misconduct occurred because the jurors employed in the healthcare field relied upon their professional knowledge in deciding the case and disregarded evidence presented at trial. Erixson also asserts that Juror No. 11's statement established that the jury applied an improper burden of proof.

"The granting of a new trial is a matter of trial court discretion and, as with all discretionary matters, will not be disturbed on appeal except by a showing of abuse of that discretion. [Citation omitted.]" *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 485, 15 P.3d 338 (2000). "Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court.

[Citations omitted.]" *Varney Business Services, Inc. v. Pottroff,* 275 Kan. 20, 44, 59 P.3d 1003 (2002).

Ojeleye contends that the hearsay affidavits submitted by Erixson, one from her trial counsel and one from a legal assistant, were insufficient to establish jury misconduct. In *Walters v. Hitchcock,* 237 Kan. 31, 36, 697 P.2d 847 (1985), our Supreme Court determined that absent extraordinary circumstances, an affidavit from trial counsel regarding a conversation with jurors is insufficient to establish trial error for refusing to recall a jury. In *Walters,* the defendant's attorney submitted an affidavit alleging that in talking to three jurors after the trial, it had become apparent that the jury had discussed during deliberations that plaintiff's recovery would be reduced by attorney fees and income taxes. 237 Kan. at 35. The court determined that the affidavit from counsel was insufficient to establish the need to recall a jury when no reason was given why the jurors could not provide affidavits themselves. 237 Kan. at 36. The court concluded:

"Verbal comments to counsel by jurors following a trial are often made under some stress, may be easily misunderstood or subject to more than one interpretation. An affidavit(s) offered to show the need to recall a jury for examination for alleged misconduct among the jurors during deliberations should come from one present during the alleged misconduct—namely one or more of the jurors. Put another way, the affiant should have personal knowledge of the facts rather than the recitation of hearsay." 237 Kan. at 36.

Erixson distinguishes *Walters* because the holding in that case was limited to a request to recall the jury under Supreme Court Rule 181 (2005 Kan. Ct. R. Annot. 227) rather than a motion for new trial. Erixson notes that K.S.A. 60-259(g) does not require the submission of affidavits when a new trial is requested on the ground of newly discovered evidence of juror misconduct. This is correct. However, if our Supreme Court has determined that an affidavit from trial counsel is insufficient to recall a jury, absent extraordinary circumstances, then logically the same reasoning should be applied to a motion for new trial.

Also, in *Howell v. Calvert,* 268 Kan. 698, 703, 1 P.3d 310 (2000), the court determined that the district court did not err in overruling a motion for new trial based upon a hearsay affidavit. The court

found insufficient the affidavit filed by a nonjuror who claimed to have overheard one of the jurors calling the plaintiff a "faker." 268 Kan. at 703. Finally, in *Butler v. HCA Health Svcs. of Kansas, Inc.*, 27 Kan. App. 2d 403, 408, 6 P.3d 871, *rev. denied* 268 Kan. 885 (1999), this court found that the trial court's refusal to accept trial counsel's affidavit containing allegations of juror misconduct was warranted because "[a]bsent extraordinary circumstances, affidavits of attorneys are not considered in determining whether juror misconduct has occurred."

Here, the affidavits submitted by Edmunds and Wright were the only evidence of the alleged jury misconduct. Obviously, neither Edmunds nor Wright were present during jury deliberations. On appeal, Erixson claims it would have been too intrusive to ask a juror in a small town to submit an affidavit indicating jury misconduct. However, Erixson does not claim that Juror No. 11 or any other juror was unable to submit an affidavit. In fact, it seems Erixson did not even ask any of the jurors if they would be willing to submit an affidavit on the alleged misconduct.

More importantly, Juror No. 11's statement taken at face value fails to establish jury misconduct. The statement merely indicates that the healthcare professionals on the jury talked about recognizing the signs of infection. There was a plethora of evidence presented by both parties at trial about recognizing the signs of infection. Presumably, this is what the jurors discussed during deliberation. Juror No. 11 never stated that the healthcare professionals relied solely upon their own professional knowledge about infection and disregarded the evidence presented by the expert witnesses. Likewise, Juror No. 11's statement that "[w]e just couldn't say for sure" does not establish that the jury applied a standard of proof more stringent than the preponderance of the evidence standard. A lay person likely would not speak in legal terms when explaining how the jury decided the case. The jury was properly instructed by the trial court on the burden of proof, and juries are generally presumed to have followed the instructions given by the court. *State v. Rogers*, 276 Kan. 497, Syl. ¶ 1, 78 P.3d 793 (2003). The isolated statement from Juror No. 11 was insufficient to overcome this presumption.

Finally, in *Cleveland v. Wong*, 237 Kan. 410, 424, 701 P.2d 1301 (1985), Wong alleged a new trial was necessary due to jury misconduct. Wong contended one of the jurors, a licensed practical nurse, used her professional knowledge to influence other jurors. 237 Kan. at 425. Three affidavits from jurors stated that the nurse juror answered questions regarding medical terminology and used her professional knowledge to argue that Wong was negligent. Other jurors denied that the nurse juror exerted any influence over the jury because of her background. The court found that nothing existed in the record indicating prejudicial misconduct. The court noted that the defendant did not claim he was unaware of the juror's medical background or that it was not disclosed during voir dire. According to the court: "It should come as no surprise that a juror with that background would be familiar with some medical terms unfamiliar to other jurors, or that the juror's past experience and training might enter into her decision-making process." 237 Kan. at 425.

Thus, even if the jurors with healthcare training in Erixson's case drew upon on their professional backgrounds in deciding the case, this does not necessarily establish jury misconduct. There is no allegation that any of the jurors failed to disclose their background or training during jury selection. In the absence of specific evidence that the jurors disregarded the evidence presented at trial, the fact that some of the jurors may have used their professional knowledge and experience to evaluate the case does not constitute misconduct.

As Ojeleye alleges, Juror No. 11's statement could be interpreted in different ways. Also, Erixson's trial counsel and the legal assistant may have misunderstood the juror or taken the juror's isolated statement out of context. Considering the secondhand nature of the information submitted to the trial court, we cannot conclude the trial court abused its discretion in denying Erixson's motion for new trial.

In the alternative, Erixson claims the trial court abused its discretion by not recalling the jury. Erixson contends that "[a] recall of the jury would have cured any uncertainty the Defendant or the trial court may have had about Juror No. 11's statement, if any."

"The burden is on the party seeking an order recalling the jurors to show the necessity for the order." *Saucedo v. Winger*, 252 Kan. 718, 729, 850 P.2d 908 (1993). As previously indicated, our Supreme Court in *Walters* determined that absent extraordinary circumstances, an affidavit from trial counsel regarding a conversation with jurors is insufficient to establish trial error for refusing to recall a jury. 237 Kan. at 36. In this case, the only "extraordinary circumstances" cited by Erixson to justify an exception to this rule is the fact that the jury only deliberated for 30 minutes. Erixson contends this created a "suspicion of misconduct" by the jury.

We are unconvinced that the short period of deliberation constituted extraordinary circumstances to disregard the general rule established in *Walters*. In this case, the jury never proceeded beyond the first question on the verdict form in finding that Ojeleye was not at fault. Although the jury deliberation was short, we cannot presume there was misconduct. Erixson's hearsay affidavits from her trial counsel and the legal assistant failed to establish a sufficient basis to recall the jury. The trial court did not abuse its discretion by denying this request.

Affirmed.