NOT DESIGNATED FOR PUBLICATION

No. 120,625

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER COTY MAIER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed July 24, 2020. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., GREEN and WARNER, JJ.

PER CURIAM: Christopher Coty Maier thinks the law does not apply to him. He avows that he, unlike other citizens, is sovereign and immune from prosecution. He is wrong.

*Maier struck his date with his pistol.*

One evening, a woman who was in a dating relationship with Maier picked him up at his home in Lawrence. They argued. Maier had a gun, pointed it at her, and demanded that she take him back home. When they arrived, he cocked the gun and pointed it at her forehead. She smacked the gun away and he then pistol whipped her in the face and caused a concussion. She bled profusely. Maier ran away after she said she would call the police. He left his holster in her car. The woman pulled into a nearby Dillons parking lot, called the police, and reported the crimes.

After investigating, the State charged Maier with aggravated assault and aggravated battery. Maier completed the required financial affidavit and asked for appointed counsel. Maier's pretrial behavior deteriorated after this.

*Maier files a deluge of motions with the court.*

Maier started filing a series of handwritten motions with the court complaining about the prosecutors, his attorney, and how the court treated him. In these rambling filings, he started to call himself, "Legion," "Lucious Inferno Valentine," and "The King." He then declared himself a sovereign citizen. He wanted to represent himself.

The court ordered a competency evaluation, found Maier incompetent, and ordered treatment. Maier continued filing motions, notices, and other documents with the court. Many were fragmented and incomprehensible. In most of Maier's filings, he claimed that the court lacked jurisdiction based on his self-appointed sovereignty and his mistrust of his lawyer who did not believe that he was sovereign. Eventually, the court ruled him competent to stand trial.

*At the jury trial, Maier walks out, refusing to participate.*

We recount extensively the details of all the steps the trial judge took to provide both sides of this case with a fair trial. In our view, the judge exercised great patience in dealing with very frustrating circumstances.

On the day of Maier's jury trial, the parties met first in chambers. The judge noted appearances on the record and conveyed Maier was present as the defendant pro se with standby counsel, Gerald Wells. Maier objected twice to being called the defendant. The court stated, "I just wanted to give you just a rundown of what we are doing today or what you can expect. But first, I want to ask you again:  Are you sure that you want to proceed pro se without an attorney?" Maier responded, "Absolutely."

The judge informed Maier she planned to instruct the jury that he chose to represent himself:

> "[I]n that instruction, I tell them that, you know, I can't help you, I can't give you advice, that—it's going to read, 'The defendant has a right to represent himself. He's chosen to do so. In representing himself, the defendant is held to the same standards as an attorney. The Court has appointed Gerald Wells as standby counsel. Mr. Wells' role is to be available to the defendant if the defendant has questions about rules and procedures. The Court is not allowed to offer the defendant assistance or to answer questions about rules and procedures beyond the assistance the Court would normally offer an attorney. Mr. Wells may advise the defendant; however, Mr. Wells is not trying the case."

Maier responded again that he was not the defendant. He claimed the instruction was illegal and the trial court did not have jurisdiction. Maier continued:

"Now, with that being said, I am choosing not to argue any more with the State or to create a controversy, and I'm not accepting any liability from the State's written controversy.

"I am not the defendant, and this is it. I'm done. I'm walking out. I'm going. Officers are can [*sic*] take me back to jail. I'm going to get my things, and I'm walking out the door. Other than that, pursuant to the Eleventh Amendment, and it has to be an Article 3 constitution court. I'm not waiving my right to trial, I'm invoking it through the separation of powers and a proper jurisdiction and a proper defendant. That is it. Until that has happened, I'm walking out."

The record does not show that the court ever considered using its contempt powers for such direct disrespectful conduct.

The judge stated that the next thing to do was orientation. Before the judge could say more, the next exchange was between a deputy and Maier. The deputy told Maier to "hold on," and Maier responded, "Coercion and kidnapping because you're blocking my way. Okay?" The deputy asked Maier to wait and Maier responded, "I'm invoking my right to avoid this." The deputy asked Maier to let him get direction from the judge, and Maier responded, "I don't take direction from an Article 1 and Article 4 court." The deputy and Wells asked Maier several times to wait and allow the deputy to hear what the judge was going to tell the deputy. Maier responded variably:

- "I'm walking out, and you can escort me."
- "No."
- "You [Wells] can walk with me, and he [deputy] can hear all he wants. I'm walking out."
- "So thank you. I'm still walking out. That's it."

After Maier left chambers, the judge stated that Maier needed to be present for the trial unless a valid waiver of Maier's presence was obtained. The State was concerned about the appearance to the jury of forcing Maier to attend the trial. The State argued that

Maier's comments, actions, and rejection of the court's jurisdiction were a valid waiver of his presence. The prosecutor said, "That's my two cents." Wells stated, "I don't have two cents, because I can't."

The trial judge was concerned with the display of force necessary to have Maier present because it put court security and other people in the courtroom in jeopardy. She agreed with the State that it would not look good to have a defendant strapped down during trial. The judge decided that Maier's rejection of the court's jurisdiction and his refusal to participate in the trial amounted to a knowing waiver of his right to be present at his trial. The State agreed and reminded the court that at a pretrial conference Maier made similar statements that he did not intend to participate. Thus, the State argued Maier's decision was not spontaneous but well-thought out and knowing.

After that, the court suggested activating the Polycom—a video conference tool—so Maier could watch the trial and then return to the courtroom if he chose to. Wells agreed. The deputy asked, "And if he refuses to do that?" The judge told the deputy to ask Maier if he would come back to court and state on the record if he would watch or participate via video from jail. Another deputy then reported Maier refused to return to court to even say he did not want to be there. The deputy reported Maier "completely 100 percent refused to make a presence again." The judge asked the deputies to activate the Polycom and then inform the court on the record if Maier refused to participate from there, as well.

During the trial court's orientation of the potential jurors, the judge informed them of the unusual circumstance of Maier's refusal to participate in the trial. Despite his refusal, she said, "[W]e're going to work with him, we're going to try and give him another chance to come, but whether or not he comes to participate, we will still hold the trial."

5

Wells revealed that he did not believe he could participate in jury selection and he did not intend to participate. When voir dire began, Wells entered his appearance as standby counsel and stated Maier was not present. Wells did not participate.

After jury selection, the parties again met in chambers. Maier was not there, but Wells attended. The deputy reported that both before and after transporting Maier to the jail and discussing the option to video conference, Maier said he did not wish to participate. Maier did not think the chance to video conference should come from a deputy, but from the judge, the prosecution, or Wells. The deputy declined to get involved and reiterated that Maier had the chance to appear or watch the trial if he wanted to. Maier "didn't say no, but he didn't go along with it."

Before the State gave its opening statement, the trial judge gave the jury a preliminary instruction consistent with the one she read to Maier before he refused to attend or participate in the trial.

After the victim's direct testimony, rather than move to cross-examination, the court noted for the record that it would not keep asking Wells if he wished to participate. The court suggested it would accept a continuing statement of—presumably—a declination to participate substantively in the trial. Wells agreed, but the court reminded him that if he stood to participate, the court would call on him. After the State rested its case, the trial judge turned again to Wells and asked, "No participation?" Wells responded, "I don't think I'm permitted to." The court agreed, "I don't know what you could do."

While in chambers to discuss jury instructions with the State and Wells, the court noted that Maier "still has not sent any message that he desires to appear or participate in the proceeding." Wells did not participate in the jury instruction conference.

The trial court instructed the jury:

- The burden was on the State to prove each claim beyond a reasonable doubt;
- Maier had a right not to testify and the jurors should not infer anything from the fact that he did not testify;
- it was for the jurors to determine weight and credit of any testimony; and
- the jury had a right to use its common knowledge and experience on any matters about which a witness testified.

After deliberations, the jury found Maier guilty of both charges. The court polled the jury at the State's request. Wells was present for the verdict, but Maier was not. Wells participated in scheduling Maier's sentencing. Wells suggested the court write Maier a letter to inform him of his convictions. The judge agreed but expressed concern that Maier would not accept it if she addressed it to him by his name. Wells did not see another option. The court wrote the letter.

*This was the correct venue.*

Maier contends the State failed to prove he committed his crimes in Douglas County. Thus, he argues, the State failed to establish that Douglas County was the proper venue for his trial and his convictions must be overturned. The State contends there was sufficient evidence to establish venue in Douglas County and argues Maier's convictions should be affirmed.

To resolve this issue, we must consider all the evidence in the light most favorable to the prosecution and decide whether a rational fact-finder could have found Maier guilty beyond a reasonable doubt. See *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). In considering the record, this court should not reweigh the evidence or reassess witness credibility. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011).

7

To prove the charges, the State needed to establish the charged acts occurred in Douglas County, Kansas. Venue is generally proper in the county where the crime was committed. K.S.A. 22-2602. This is a fact question for the jury. *State v. Calderon-Aparicio*, 44 Kan. App. 2d 830, 837, 242 P.3d 1197 (2010). Venue may be established by proof of facts and circumstances introduced in evidence from which the place or places of commission of the crime or crimes may be fairly and reasonably inferred. *State v. Damewood*, 245 Kan. 676, Syl. ¶ 12, 783 P.2d 1249 (1989). Further, the trial court and the jury may take judicial notice of the locations in their county. *Calderon-Aparicio*, 44 Kan. App. 2d at 838.

The State admits that the prosecutor did not ask the witnesses if the crimes occurred in Douglas County. Instead, the State argues that the prosecutor established venue through circumstantial evidence. A verdict may be supported by circumstantial evidence, if such evidence provides a basis for a reasonable inference by the fact-finder about the fact in issue. Circumstantial evidence, to be sufficient, need not exclude every other reasonable conclusion. A conviction of even the gravest offense can be based entirely on circumstantial evidence. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

First, the victim testified that she picked Maier up at his home on Jasu Drive in Lawrence. She testified that he hit her with the gun in front of his house and then she drove close by to the Dillons parking lot where she waited for police to arrive. Second, her 911 call triggered the dispatch of a Lawrence police officer to her location. A Lawrence police officer responded to the report of a disturbance at Dillons on 23rd Street. Nothing in the officer's testimony suggested he reported to a scene outside his jurisdiction or that he left Lawrence during his investigation. See *State v. Stevens*, 285 Kan. 307, 325-26, 172 P.3d 570 (2007).

8

When all of this testimony was considered by the jurors in the context of the court's instruction for them to use their common knowledge and experience to evaluate that testimony, the evidence gives rise to the reasonable inference that the crimes occurred in Douglas County. In *Calderon-Aparicio*, 44 Kan. App. 2d at 839-40, the court held that the evidence at trial gave rise to the inference that the crime happened in Johnson County. Similarly, all the locations mentioned by the witnesses here are in Lawrence—within Douglas County.

The jury instructions required the State to prove venue. If the jury did not know that the locations mentioned throughout the victim's testimony were in Lawrence—Douglas County—it could not have been convinced beyond a reasonable doubt that Maier committed the charged crimes. Jurors are generally presumed to follow their instructions. *State v. Rogers*, 276 Kan. 497, 503, 78 P.3d 793 (2003).

It is reasonable to infer from the location of Dillons and its proximity to Maier's home, and with Lawrence police responding to the victim's 911 call, that Maier committed the crimes within Douglas County. Considering both the direct and circumstantial evidence—and viewing that evidence in the light most favorable to the prosecution—a rational jury could have found Maier guilty beyond a reasonable doubt of both crimes based, in part, on the State's proof that the offenses occurred in Douglas County.

*Maier's claim of personal sovereignty does not make him immune from the law.*

Maier's complaints and his objections to the trial court's jurisdiction to prosecute him arise from his claim that he is a sovereign citizen. This is not the first appellate case to deal with such a claim. Another panel of this court used an analysis of federal caselaw to reject a similar claim.

9

> "[A]n individual's belief that his status as a 'sovereign citizen' puts him beyond the jurisdiction of the courts 'has no conceivable validity in American law.' *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990). . . .
>
> 'Regardless of an individual's claimed status of descent, be it as a "sovereign citizen," a "secured-party creditor," or a "flesh-and-blood human being," that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however, they are presented.' *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011)." *Requena v. State*, No. 116,251, 2017 WL 4183229, at * 4 (Kan. App. 2017) (unpublished opinion), *aff'd* 310 Kan. 105, 444 P.3d 918 (2019).

See *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992). *Jagim* found similar issues were "completely without merit" and "patently frivolous". It rejected those issues "without expending any more of this Court's resources on their discussion."

Our Kansas Supreme Court has recently affirmed the *Requena* panel. The court held that claims of sovereign citizenship are "ultimately meritless." *Requena*, 310 Kan. at 110. Thus, if Maier's arguments on appeal rely on his sovereign citizenship claims, we hold they are meritless.

For his second issue, Maier seems to contend that the trial court erred by allowing him to do what he wanted to do—that is, not participate in his trial. Maier argues that the court erred in allowing him to represent himself when he did not participate in his trial. He tries to weave two individual rights into his claimed errors—the right to be present during his trial, and the right to represent himself. He contends the record fails to disclose that he intelligently waived these rights.

The State responds that Maier's intentional conduct effectively waived both of those rights.

A criminal defendant's right to be present at every critical stage of the proceedings is guaranteed by both the United States Constitution and Kansas statute. *State v. McDaniel*, 306 Kan. 595, 600, 395 P.3d 429 (2017). The right to be present at one's own criminal trial is "'scarcely less important to the accused than the right of trial itself.'" *State v. Rucker*, 49 Kan. App. 2d 414, 416, 310 P.3d 422 (2013). This constitutional right "emanates from the Sixth Amendment right to confront witnesses and from the right to due process guaranteed under the Fifth and Fourteenth Amendments." *State v. Davis*, 284 Kan. 728, 731, 163 P.3d 1224 (2007).

The right is codified at K.S.A. 2019 Supp. 22-3405(a) and is analytically and functionally identical to the requirements under the Confrontation Clause and the Due Process Clause of the federal Constitution that a criminal defendant be present at any critical stage of the proceedings. *State v. Killings*, 301 Kan. 214, 241, 340 P.3d 1186 (2015). Whether a defendant's right to be present at a critical stage of the proceedings has been violated is a question of law subject to de novo review. *Davis*, 284 Kan. at 730-31.

The *Rucker* court suggested that a trial judge should do two things before the defendant can waive such a right. First, the judge should clearly explain the right to the defendant. Second, the judge should determine whether the defendant understands the right and is voluntarily waiving it. 49 Kan. App. 2d at 417. Maier argues the trial court did not personally and directly explain to him his right to be present for his trial, and the record does not show that he knowingly and voluntarily waived his right to be present. Maier also claims there was "no indication" the trial court could not have brought him back to court after he walked out to ensure he knowingly waived his right to be present. The State disagrees and argues the record, in context, reflects that Maier knew his rights, and the circumstances establish that he knowingly and voluntarily waived his right to be present.

In an exercise of common sense, the *Rucker* court acknowledged the possibility of cases in which a trial judge would not have to personally and directly explain to the defendant his or her right to be present to establish a valid waiver. 49 Kan. App. 2d at 417. This seems to be such a case.

Maier displayed his intent to not attend his trial at his July 2018 pretrial conference. Then, in chambers on the day of trial, he was relentless in his objective to leave. He even challenged the deputy who blocked Maier, and in turn, Maier accused the deputy of kidnapping. Maier expressed his knowledge of his rights and demanded that he be allowed to leave despite the judge's, Wells', and the deputy's efforts to persuade him to wait and listen. Maier consistently interrupted the judge to object to being referred to by his name and as the defendant. He again challenged the court's jurisdiction by refusing to participate until he got an "Article III" court decision. He argued that he did not have to listen to an "Article I" or "Article IV" court. Like at his pretrial conference, his objections on the day of trial were rooted in his sovereign citizen claims.

Even though we see no indication that Maier would act violently, he demonstrated belligerence and obstinance on the morning of his trial, which placed the trial court in apprehension of having to strap him down in the courtroom. See *Illinois v. Allen*, 397 U.S. 337, 343-46, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970). *Allen* specified constitutionally permissible ways for a court to handle an obstreperous defendant and the risks involved with each option. Rather than physically restrain Maier, the trial court allowed him to "invoke his right to avoid" the trial and leave. The court then ordered the video conferencing.

The record makes clear that the deputy would have had trouble bringing Maier back to chambers or the courtroom to have a discussion with the judge about his right to be present at trial. The record also shows that Maier was aware of his right to be present at trial and that he could waive that right. He was unequivocal and adamant in his

12

decision to not participate in his trial. He knew his trial was proceeding without him and was given many opportunities to return. He chose not to use them. See *State v. Salton*, 238 Kan. 835, 838, 715 P.2d 412 (1986). *Salton* held that the defendant's behavior amounted to a waiver of his right to be present.

We hold that Maier's conduct amounted to a waiver of his right to be present.

*The trial court's revocation of the right to self-representation was not required.*

Maier seems to argue that the court was required to revoke his right to self-representation and force Wells to represent him at trial. We hold that such steps were not legally called for under these circumstances.

The Supreme Court of the United States has held that a failure to honor a criminal defendant's properly asserted right to self-representation is structural error.

> "Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis." *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984).

In Kansas, our Supreme Court has held that, "the right is either respected or denied; its deprivation cannot be harmless.'" *State v. Vann*, 280 Kan. 782, 793, 127 P.3d 307 (2006) (quoting *McKaskle*, 465 U.S. 168, 177 n.8, 104 S. Ct. 944, 79 L. Ed. 2d 122 [1984]).

Generally, a defendant has a right to self-representation, but that right is unqualified only if it is asserted before trial. If this right is asserted after trial begins, a decision to grant or deny self-representation lies within the sound discretion of the trial judge. *State v. Collins*, 257 Kan. 408, Syl. ¶ 2, 893 P.2d 217 (1995). A trial court's

13

decision to revoke a defendant's right to self-representation is also discretionary. *State v. Plunkett*, 261 Kan. 1024, 1028-29, 934 P.2d 113 (1997).

The trial court did not revoke Maier's right to self-representation. Four reasons force us to conclude that this was not error. First, Maier distrusted Wells. If the trial court revoked Maier's self-representation and ordered Wells to represent him at trial, Wells would have decided how to proceed with the defense without Maier's input and likely in direct contravention of Maier's theory of defense—his jurisdiction argument. This could have opened Wells to an ethics complaint. See KRPC 1.2(a) (2019 Kan. S. Ct. R. 296).

Second, requiring Wells to serve as trial counsel could have been requiring hybrid representation, which Kansas does not recognize. See *State v. Ames*, 222 Kan. 88, 99-100, 563 P.2d 1034 (1977). Third, because the trial court activated the video conference equipment so Maier could observe, there was always the possibility he would change his mind and return to his trial, which would have compounded the hybrid representation problem. Fourth, since Wells had been in a standby counsel status for several months at that point, his role had been limited. He had not been in a position to manage proceedings or make substantive contributions. Arguably, Wells was not prepared to go to trial and offer an adequate defense. See *State v. Rassel*, No. 107,336, 2013 WL 1688930, at *3 (Kan. App. 2013) (unpublished opinion).

Based both on his statements and his behavior, Maier knowingly waived his right to be present at his trial. His voluntary absence does not rise to a level of obstructionism to warrant the revocation of his right to self-representation. This is especially true under the circumstances when the trial court faced competing constitutional rights and significant potential consequences. Under these circumstances, we cannot say that the trial court was unreasonable when it did not revoke Maier's right to self-representation. Maier has not shown that the trial court abused its discretion.

Affirmed.