(609 P.2d 219)

No. 50,983

STATE OF KANSAS, *Appellee,* v. JONATHAN EDWARD ALLEN, *Appellant.*

Petition for review denied May 19, 1980.

Opinion filed March 28, 1980.

*William A. Cleaver,* of Overland Park, for appellant.

*Michael B. Buser,* assistant district attorney; *Dennis W. Moore,* district attorney; and *Robert T. Stephan,* attorney general, for appellee.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

MEYER, J.: This is an appeal by Jonathan Edward Allen (defendant) from his conviction by a jury of aggravated battery (K.S.A. 21-3414) and unlawful use of weapons (K.S.A. 1979 Supp. 21-4201). His motion for new trial was overruled.

Defendant, 19 years of age, was employed as a maintenance man at the Johnson County Courthouse in Olathe. On March 28, 1978, defendant arrived for work at approximately 5 p.m. He locked the last front door on the first floor of the courthouse and proceeded to his assigned work area on the second floor. He was walking down a hallway with his trash cart when an elevator bell rang. As he went down the hall to see who was on the elevator,

and as he passed the office of Judy Clouston, a court reporter, according to him, "his heart began to beat uncontrollably." He removed a knife from his pocket and stated that after he had hesitated several times, something popped in his mind and he entered Judy Clouston's office, stabbed her several times, and ran out of her office. He hid the knife in the ceiling of a janitor's closet, but later returned and sought out a sheriff's officer to help the victim. The victim pointed out defendant as being the person who stabbed her. After being questioned by sheriff's authorities, defendant took an hour dinner break and thereafter returned to the courthouse where later that night he confessed to the stabbing. His written confession was admitted into evidence at trial. Defendant raised the theory of insanity as to the aggravated battery charge and produced the testimony of a psychiatrist. The State presented the testimony of a psychiatrist and a clinical psychologist. Defendant appeals from his convictions and from the denial of his motion for a new trial.

Defendant first complains that the trial court abused its discretion in failing to grant his motion for change of venue due to pretrial publicity and the fact that the crime took place at the courthouse.

The change of venue statute, K.S.A. 22-2616(1), provides:

"In any prosecution, the court upon motion of the defendant shall order that the case be transferred as to him to another county or district if the court is satisfied that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that county."

It is well settled that a trial court's determination regarding venue lies within its discretion and that the court's determination will not be disturbed on appeal unless there is a showing of prejudice to the substantial rights of the defendant. *State v. Gilder,* 223 Kan. 220, 222-23, 574 P.2d 196 (1977); *State v. McCorgary,* 218 Kan. 358, 367, 543 P.2d 952 (1975), *cert. denied* 429 U.S. 867 (1976). The burden of proof to show that such a prejudice exists must be borne by a defendant and must be shown as a demonstrable reality, not merely by speculation. *State v. Gilder; State v. Gander,* 220 Kan. 88, 92, 551 P.2d 797 (1976). Media publicity does not establish prejudice per se. *State v. Gilder.*

In the instant case defendant presented only newspaper articles in support of his motion for change of venue. He did not produce

affidavits to establish the effect of the publications. There is no indication that the fact the trial occurred in the same courthouse in which the crime was committed affected the jury. The incident occurred on the second floor of the courthouse and the trial was held on the third floor. The trial court admonished the jury that they were to take the elevator directly to and from the third floor and were not to wander around on the second floor. Defendant's allegations that the jury might nevertheless overhear conversations of the victim's fellow employees in the halls or in the cafeteria is too speculative in nature to show prejudice as a demonstrable reality. We conclude that there is no error as to this issue.

Defendant next complains that the court erred in overruling his motion for new trial based upon alleged juror misconduct. His claim of misconduct is that the jury foreman, Baker, spoke to three different people about the trial while the case was in progress.

During an adjournment of the trial, Baker went on a personal errand. The first person to whom he spoke was Mrs. Althouse. She stated that Baker indicated that psychiatric testimony was to come in that afternoon, that Baker didn't indicate how he would vote, that she didn't tell him how to vote, nor did she give him an indication whether she thought defendant was guilty. She stated there was no discussion of newspaper and television coverage. She also stated that it was her opinion or impression from the conversation that Baker was going to vote guilty; however, he had never told her how he was going to vote.

The next person to whom Baker spoke was Lewis Petzold, who testified that Baker told him that after having heard the confession of defendant, he couldn't go along with insanity as a defense or with the psychiatrist's reports. He testified Baker said that the young man had stabbed the woman, but this was based on the evidence adduced at trial. Petzold further testified that Baker did not tell him how he was going to vote. He also stated that he did not express any personal opinion to Baker. Petzold's further testimony was to the effect that defendant had made a confession and that Baker was certain that defendant had stabbed the victim. He testified that Baker said he felt that there had to be something more than just one human being wanting to go in and stab another human being and that there had to be some ulterior motive.

Jack Petzold, the third person to whom Baker talked, testified that he got the impression that Baker thought defendant was guilty, and specifically stated that Baker had said, "[I]t just looks to me like the man is guilty." He testified that he had not sought to influence Baker's verdict in any way.

Baker testified that he had not told any of the three that he thought defendant was guilty, nor did he state how he was going to vote. He did admit that he mentioned the fact that defendant had testified that he had stabbed the lady. Baker also testified that he stated that the reason the court had been recessed was that they were waiting to hear testimony from some psychiatrist. He further testified that none of the three he had spoken with had tried to influence his opinion.

In summation, it is defendant's contention in regard to this jury misconduct, that there was prejudice because the statements indicated that the juror had made up his mind as to guilt before all the testimony was in. However, had Baker made up his mind or formed an opinion as to guilt at that time, there is no indication that that opinion was based on anything other than evidence adduced at trial. There was, however, a clear conflict in the evidence as to whether Baker had, in fact, made up his mind as to defendant's guilt.

We have no hesitancy in concluding that the conduct of the juror in question was improper. At the same time it is not every improper misconduct that will justify or require the granting of a new trial; and the matter is largely within the discretion of the trial court.

In *State v. Coburn,* 220 Kan. 743, 746-47, 556 P.2d 376 (1976), we find:

"Not every jury is to be disqualified because of some improper communication or contact made to a juror prior to or during trial. The granting of a mistrial or new trial because of such conduct is generally regarded as resting in the sound discretion of the trial judge who is best able to assess the impact of any such approach upon the fairness of the trial. [Citation omitted.] To warrant reversal of a judgment because of improper contact or communication between a juror and an outsider, there must be some showing or indication of injury, actual or potential, to the complaining party, or the act or conduct complained of must be such as to afford reasonable grounds to question the fairness of the trial or the integrity of the verdict, or as would tend to destroy or impair public confidence in trial by jury. [Citation omitted.] The substance of the communication may be important. If the comment relates to the merits of the case, it will be more likely to be found

prejudicial. However, if it relates to the case merely in a general or incidental manner it will more likely be found harmless. [Citation omitted.]"

"[I]t must be shown that remarks so made were such as would necessarily prejudice the party complaining, or it must be shown that prejudice did result therefrom, in order to warrant this court in directing new trial  . . . ."

In *State v. Cypher,* 92 Idaho 159, 168, 438 P.2d 904 (1968), a juror who was later selected foreman of the jury asked a question and made a declaration that if defendant was guilty he should throw himself on the mercy of the court. The court recognized the rule that:

"Statements and expressions of opinion concerning the case or evidence offered therein made by a juror outside the jury room, during the course of the trial and before the submission of the case, are normally grounds for a new trial if they indicate an opinion unfavorable to the losing party or ill-will toward him. [Citations omitted.] A casual remark of a juror however, though such may indicate bias at that time, is not necessarily a ground for a new trial. [Citation omitted.]

"A mere expression of opinion by a juror as to the merits of the case, based only on the testimony that has been adduced and not indicating any improper bias or prejudice against the unsuccessful party, or an expression of opinion that the case ought to be settled out of court, does not evidence bias or prejudice against either party."

The statements of Baker in the case at bar were based on evidence adduced at trial and did not indicate any improper bias or prejudice against the unsuccessful party.

In *Freeman v. Vetter,* 61 Tex. Civ. App. 569, 574, 130 S.W. 190 (1910), a juror, after opening argument for appellee and during a recess of the court, had told a third person who was not on the jury that he thought appellee was badly injured and ought to have all he sued for. In that case, the court noted that the third person did not discuss the case with the juror and the conversation did not have any effect on the verdict of the jury. The court stated that:

"It merely showed that the juror had formed an opinion and his expression of his opinion did not in any manner change that opinion. Nothing was said or done to influence the juror or to crystallize his opinion, but he had it when he told [the third person] about it and if he changed the change was not caused by the conversation. His conduct was very reprehensible and deserves censure, still we can not see how the expression of the opinion could have injured appellant."

Finally, in *Krieg v. Grant,* 248 Iowa 396, 80 N.W.2d 724 (1957), a juror expressed an opinion in a conversation in a restroom while the trial was in progress that he had made up his mind. The court stated that this statement was not such as to justify a new trial as a

juror may hear part of the evidence and make a certain decision, and may later hear all of the evidence as the trial progresses and arrive at a contrary final decision.

The trial court did not abuse its discretion in denying the motion for a new trial.

Defendant's third issue was abandoned at the hearing before this court.

Defendant's final claim of error was that he was denied a fair trial by the inherent deficiencies in the *M'Naghten* rule and the trial court's failure to instruct the jury based on the A.L.I. Model Penal Code (lack of capacity to appreciate wrongfulness due to mental disease or defect).

Kansas has always adhered to the *M'Naghten* rule. The court, in *State v. Smith,* 223 Kan. 203, 208, 574 P.2d 548 (1977), after relating the various arguments against the *M'Naghten* rule, states:

"To its critics we reply the *M'Naghten* rule has the merit of being well-established as well as practical. Although it is not scientifically perfect, we feel it is the best criteria yet devised for ascertaining criminal responsibility. Psychiatry is a science in which great uncertainty still exists. Moreover, criminal responsibility is a legal question and not a medical question. Finally, while a majority of the federal circuits may follow the American Law Institute test, a majority of the states follow *M'Naghten.*"

Moreover, as held in the recent cases of *State v. Levier,* 226 Kan. 461, 465, 601 P.2d 1116 (1979), and *State v. Sandstrom,* 225 Kan. 717, 731, 595 P.2d 324, *cert. denied* 444 U.S. 942 (1979), the majority of the Kansas Supreme Court still adheres to that view. Defendant's complaint as to the *M'Naghten* rule lacks merit.

Affirmed.