NOT DESIGNATED FOR PUBLICATION

No. 119,100

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LUIS VALLEJO,
*Appellee*,

v.

BNSF RAILWAY COMPANY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WILLIAM P. MAHONEY, judge. Opinion filed February 5, 2021. Reversed and remanded with directions.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, and *Chad M. Knight* and *Trent R. Church*, of Knight Nicastro MacKay, LLC, of Kansas City, Missouri, for appellant.

*Steven L. Groves*, of Groves Powers, LLC, of St. Louis, Missouri, and *Daniel J. Cohen*, pro hac vice, of Law Offices of Daniel J. Cohen, of St. Louis, Missouri, for appellee.

Before BUSER, P.J., ATCHESON, J., and WALKER, S.J.

BUSER, P.J.:  Luis Vallejo sued his employer, BNSF Railway Company (BNSF), under the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 (2018) et seq., for personal injuries allegedly sustained while working on the railroad. Since that time, this case has undergone four jury trials, two of which are relevant to this appeal. In the second trial, the jury returned a 10-2 verdict in favor of BNSF on the issue of liability. The district court, however, granted Vallejo's motion for new trial after ruling that some jurors

committed misconduct. The fourth trial resulted in a jury verdict in Vallejo's favor and the district court awarded him postjudgment interest under Kansas law.

BNSF appeals the district court's grant of a new trial after the second trial. It contends the district court abused its discretion by granting Vallejo's motion for new trial due to juror misconduct. The railroad asks our court to reinstate the jury's verdict in its favor. Alternatively, BNSF claims the district court erred by awarding Vallejo postjudgment interest under Kansas law after the fourth trial.

Upon our review, we hold the district court erred in granting Vallejo a new trial based on juror misconduct. Accordingly, we reverse the order granting a new trial and remand with directions to reinstate the jury's verdict in the second trial. Given our holding, BNSF's alternative claim of error regarding the award of postjudgment interest after the fourth trial is moot.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2008, Vallejo sued BNSF under FELA and sought damages for a back injury he sustained while working on the railroad. Vallejo claimed that he herniated a disk in his back while fabricating a sill step to install on a railcar. A sill step is a stirrup-like foothold on a railcar that employees use to mount and dismount the railcar.

On August 4, 2006, Vallejo was called in to work overtime at BNSF's Argentine Yard in Kansas City, Kansas. After Vallejo arrived at the yard, he selected the last work truck available to him. According to Vallejo, the truck had few tools that he needed to perform his job. Vallejo asked the lead man, Jeremy Tordoff, if he could borrow some tools. Tordoff told Vallejo that he did not have any tools.

2

Vallejo asked Tordoff to call the foreman and request some tools. Tordoff called a BNSF foreman, Charles Sherrill, and asked that he provide Vallejo some tools. During the conversation, Vallejo overheard Sherrill talking loudly to Tordoff. According to Vallejo, after the conversation Tordoff explained, "'[Sherrill] just hung up on me. He didn't say he was going to bring anything. He just got upset about it.'"

Vallejo and Tordoff drove to a storeroom to locate some tools but no employees were on duty. Vallejo next searched the workplace and located tools that he needed to fabricate the sill step. Vallejo explained that he found a pipe wrench and a hammer, and his work truck had a torch and a vice. Vallejo noted the torch had a cutting tip, which appeared to be in usable condition. But the vice was missing a bolt and the teeth were not in good condition. Upon inspection, however, Vallejo believed the vice was fairly sturdy and still usable.

After Vallejo found the tools he needed, he obtained a piece of metal that would become the sill step and drove back to his work site. Vallejo testified that he needed to make two 90-degree bends in the metal to make the sill step. According to Vallejo, the torch he used to heat the metal was not effective and, as a result, he had to overexert himself and use a significant amount of effort to twist the metal. During the fabrication, the metal slipped in the vice and "jerked" Vallejo. Eventually, Vallejo completed the task and bent down to pick up the scrap metal that had dropped on the ground. When Vallejo stood back up, he felt an extreme pain in his back. Vallejo was later diagnosed with a herniated disk.

This case has resulted in four jury trials. The first trial occurred in 2010 and culminated in a jury verdict in favor of Vallejo. Upon finding BNSF negligent, the jury awarded Vallejo over $1.1 million in damages. BNSF appealed, contending that the district court erred by refusing to instruct the jury on contributory negligence. Our court

3

agreed and reversed and remanded for a new trial. *Vallejo v. BNSF Railway Company*, 46 Kan. App. 2d 498, 263 P.3d 208 (2011).

The second trial occurred in 2015. Following the two-week trial which included lengthy deliberations, the jury returned a 10-2 verdict in favor of BNSF on the issue of liability.

Vallejo filed a motion for new trial, contending that three jurors committed misconduct. In support of his motion, Vallejo submitted declarations from the two jurors who dissented from the verdict—Juror R. and Juror F.

In her declaration, Juror R. attested to the following under the penalty of perjury:

- During a break on the second or third day of trial, Juror T. approached Juror R. and stated that "very firmly and emphatically, 'I've already made up my mind.'"
- Towards the end of the first week of trial, Juror R. overheard a male juror behind her state that he "had already made up his mind." Juror R. turned around and saw three male jurors talking, but she could not identify which juror made the comment.
- During jury deliberations, Juror H. argued strongly in favor of the railroad. But instead of focusing on the evidence presented at trial, Juror H. "constantly focused on how her company works, and made it clear that she was basing her decision almost entirely on her company's behavior instead of the evidence about the railroad's behavior." For example, when discussing whether the railroad failed to provide Vallejo with the proper tools and ignored the requests for proper tools, Juror H. said, "'At my plant, we don't do this,'" "'There is no way in the world this would happen,'" "'I know because at my plant that wouldn't happen,'" and "'I cannot believe the railroad did that, and I don't believe it happened.'"

4

- During jury deliberations, Juror H. also claimed that Vallejo had "injured himself at home and he's just trying to get money from BNSF for something he did at home."

The declaration that Juror F. signed generally supported Juror R.'s account of the statements that Juror H. made during jury deliberations. Juror F. declared under the penalty of perjury that

> "[Juror H.] focused on how things worked at her company, and she said that was why she refused to believe the testimony of Mr. Vallejo and all the other car department employees regarding unavailable and inadequate tools, and supervisors ignoring requests for tools and still expecting the workers to get the job done. I also recall her suggesting that Mr. Vallejo actually hurt himself at home."

Before trial, Juror H. stated that she worked as a general manager for Harvest Meat Company. Juror H. explained that her job responsibilities include ensuring the safety of the workplace and she takes that responsibility seriously. In her position, Juror H. also ensures that her company's employees have the right equipment and tools. During voir dire, Vallejo's counsel asked Juror H. whether she "would in any way, shape or form tend to see the reality of the workplace more through the lens of the employer by virtue of [her] work, or if [she] can set that aside." Juror H. explained she "would have to set that aside" as she does when employees make claims for injuries in her workplace.

In response to Vallejo's motion for new trial, BNSF presented affidavits from Jurors T. and H. in which they denied making the statements that Jurors R. and F. attributed to them. Specifically, Juror T. denied telling any juror before deliberations that she had already made up her mind. Juror H. stated that her vote was based entirely upon the evidence presented at trial and denied making the comments referenced in Juror R.'s declaration.

5

In February 2016, the district court held a hearing on Vallejo's motion for new trial. Although presented with directly contradictory written declarations and affidavits, the district court ruled that it would not recall the jury for testimony relating to the claimed juror misconduct. Of note, neither party has appealed that ruling. After hearing the parties' arguments, and considering the written declarations and affidavits, the district court found the jurors committed misconduct and granted Vallejo's motion for new trial. The district court explained:

> "This case wasn't a long case, but it was pretty long, and the allegation is that just a couple days into the trial, there's comments made that somebody made up their mind already contrary to the lengthy admonition the Court gave after the jurors were sworn in and . . . I made it clear that, 'You've got to keep an open mind. You can't decide this case based on what you've heard so far. You have to wait.' And so . . . you have three people allegedly having a conversation about somebody making up their mind. You have a comment that one juror was making that same statement prior to deliberation. And then you have comments that jurors were deciding this case during deliberations not based on the evidence presented . . . . I told them that several times that they could evaluate it based on their common sense and experience, but they're not supposed to substitute their experience for what the evidence was. You have an allegation that one of the jurors was talking about what they do at her job or their work, and [then] making inferences that were not raised by any evidence about the source or initial occurrence of injury in this case.
>
> . . . .
>
> "I think in this case based on the information that I've been provided, the Court's going to find that there was juror misconduct in this case. I made lengthy admonitions. I made it clear every time we broke. And the Court's going to find that even though we have inconsistent affidavits, that it's well within the discretion of the Court to make that finding. And so for those reasons, I'm going to grant [a] new trial based on juror misconduct."

The district court's reasoning was incorporated in the journal entry granting Vallejo's motion for new trial.

A third jury trial was held in August 2017. The district court sua sponte declared a mistrial, however, because multiple jurors were sleeping during the proceedings.

A fourth trial was held in October 2017. On this occasion, the jury returned a verdict in favor of Vallejo, but found that he was 50% contributorily negligent, resulting in a net award of damages totaling $348,000. An amended journal entry of judgment stated that the award would accrue postjudgment interest under K.S.A. 16-204.

BNSF appeals the district court's grant of a new trial after the second trial based on juror misconduct. Alternatively, BNSF appeals the district court's award of postjudgment interest after the fourth trial.

ORDER GRANTING NEW TRIAL BASED ON JUROR MISCONDUCT

BNSF contends the district court abused its discretion in granting a new trial after the second trial when the jury returned a verdict in the railroad's favor. BNSF asserts the district court abused its discretion in several ways. Upon our review, we decide this case by addressing the railroad's principal argument that the district court erred as a matter of law by considering evidence that was inadmissible under K.S.A. 60-441. Additionally, BNSF asserts there was no substantial competent evidence to support the conclusion that juror misconduct resulted in substantial prejudice to Vallejo.

In considering these claims of error, we will individually analyze the three allegations of juror behavior that the district court found constituted juror misconduct that resulted in substantial prejudice to Vallejo. Those three allegations are: (1) the finding that Juror T. and an unknown juror prematurely made up their minds about their verdict for BNSF; (2) the finding that Juror H. substituted her own work experiences for the trial evidence; and (3) the finding that Juror H. arrived at her verdict based upon the unfounded belief that Vallejo injured himself at home.

7

*Standards of Review*

The district court has discretion to grant or deny a motion for new trial under K.S.A. 2020 Supp. 60-259(a), and an appellate court will not disturb the district court's ruling on a motion for new trial unless the district court abused its discretion. *City of Mission Hills v. Sexton*, 284 Kan. 414, 421, 160 P.3d 812 (2007). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). The party asserting the district court abused its discretion bears the burden of showing such abuse. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

The parties dispute our standard of review over the district court's factual findings. BNSF argues we exercise de novo review over what the facts establish because the district court based its decision on written documents alone. Vallejo argues that a de novo standard of review is inappropriate because "the jurors' declarations and affidavits are clear and specific" and "[t]he resolution of that conflicting testimony was for the trial court to decide."

When reviewing a district court's findings of fact, our court typically considers whether those factual findings are supported by substantial evidence. *Stephens v. Ainsworth*, 56 Kan. App. 2d 668, 672, 437 P.3d 51 (2019). But if the controlling facts are based solely on written or documentary evidence, an appellate court generally may determine de novo what the facts establish. *Telegram Publishing Co. v. Kansas Dept. of Transportation*, 275 Kan. 779, 784, 69 P.3d 578 (2003).

Kansas courts, however, have "crafted an exception to the documentary evidence exception." *Garvey Elevators, Inc. v. Kansas Human Rights Comm'n*, 265 Kan. 484, 492, 961 P.2d 696 (1998). "[W]here there is conflicting written testimony and the court is

8

called upon to disregard the testimony of one witness and accept as true the testimony of the other . . . the standard of review on appeal is whether the findings of the district court are supported by substantial competent evidence." *In re Adoption of Baby Boy B.*, 254 Kan. 454, Syl. ¶ 2, 866 P.2d 1029 (1994).

Since the jurors' declarations and affidavits in this case resulted in materially conflicting versions of facts, we will evaluate the district court's factual findings by ascertaining whether there was substantial competent evidence to support those findings. *Garvey Elevators, Inc.*, 265 Kan. at 492-93. Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). Our Supreme Court has instructed us in the proper methodology of determining whether substantial competent evidence exists:

> "In determining whether substantial competent evidence supports the district court's findings, appellate courts must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings and must disregard any conflicting evidence or other inferences that might be drawn from it. Accordingly, appellate courts do not reweigh the evidence or assess the credibility of witnesses. [Citations omitted.]" *Gannon*, 305 Kan. at 881.

In this regard, "our role is not to seek out evidence contrary to the district judge's findings or to focus on evidence contrary to those findings." *Williams v. Lawton*, 288 Kan. 768, 805, 207 P.3d 1027 (2009).

*Brief Summary of Kansas Law Regarding Jury Misconduct*

Kansas law governing impeachment of a jury's verdict is founded on two competing considerations. *Williams*, 288 Kan. at 797. On one hand, each case must be "decided solely on the evidence presented and the instructions given to a fair and

impartial jury." 288 Kan. at 797. Towards this end, K.S.A. 60-444(a) allows a juror to testify as a witness "to conditions or occurrences either within or outside of the jury room having a material bearing on the validity of the verdict or the indictment, except as expressly limited by K.S.A. 60-441."

On the other hand, there is a need for confidentiality in the jury's deliberations, protection against corruption of jurors following discharge, and finality of jury verdicts. 288 Kan. at 797. To further these goals, Kansas courts have long held that public policy forbids inquiring into the mental processes that a juror used to reach a verdict because there is no way to test the truth of the answers. *Kincaid v. Wade*, 196 Kan. 174, 178, 410 P.2d 333 (1966). This public policy is codified in K.S.A. 60-441, which prevents courts from considering evidence used to "show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined." Whether the district court complied with this statute in arriving at its legal conclusion that juror misconduct occurred is a central question addressed in this opinion.

In weighing these competing policies, the general rule is that courts do not allow testimony or affidavits of jurors to impeach a verdict unless it is obvious from the verdict itself that the jury failed to follow the jury instructions. *Williams*, 288 Kan. at 798. Relevant to this appeal, exceptions are recognized when jurors intentionally disregard a court's instructions or violate one or more of the essential formalities of proper jury conduct. 288 Kan. at 798. Our Supreme Court has recognized that the line between when the general rule applies and when the exceptions apply is thin and may often be difficult to discern. 288 Kan. at 798.

In this opinion we will also consider BNSF's claim that any juror misconduct did not substantially prejudice Vallejo's rights. Under Kansas law, "[j]ury misconduct will not justify the granting of a new trial unless the misconduct is shown to have

10

substantially prejudiced a party's rights." 288 Kan. at 802. Since Vallejo is the party claiming prejudice from alleged jury misconduct, he has the burden to establish that prejudice. See 288 Kan. at 803.

*Statement That Two Jurors Prematurely Made Up Their Minds About the Verdict*

BNSF contends the district court abused its discretion by finding that Juror T. and an unknown juror prematurely made up their minds regarding their verdict. Vallejo counters that this finding was not based on inadmissible evidence and the context of the evidence established the juror misconduct.

Juror R.'s declaration stated that, during a break on the second or third day of trial, Juror T. approached her and said:

> "[V]ery firmly and emphatically, 'I've already made up my mind.' The Judge had told us that we were not allowed to discuss the case until both sides had put on their evidence, and I was concerned that she might get us disqualified from the jury, so I immediately told her that we could not talk about that, and I walked away. After the parties rested their cases and we began our deliberations, it was clear that when [Juror T.] previously indicated that she had already made up her mind, it was in favor of the railroad. From the start of deliberations through to the return of the verdict, her votes were always for the railroad."

Towards the end of the first week of trial while the jury members were sitting on a bench outside the courtroom during a recess, Juror R. overheard a male juror behind her state that he "had already made up his mind." Juror R. turned around and saw three male jurors talking, but she could not identify which juror made the comment.

BNSF presented the affidavit of Juror T. which directly contradicted some of Juror R.'s statements. In relevant part the affidavit stated:

11

"3. At no time during the trial did I approach [Juror R.] and state 'I have already made up my mind.' To my recollection, I did not even speak to [Juror R.] until the fourth day of trial, during a lunch break.

. . . .

"8. I had not made up my mind prior to beginning deliberations.

. . . .

"11. My final conclusion was reached during deliberations."

BNSF contends the district court abused its discretion by finding that Juror T. and an unknown juror prematurely made up their minds regarding the verdict. BNSF makes two arguments. First, it asserts the district court violated K.S.A. 60-441 by finding the jurors prematurely made up their minds about the verdict. Specifically, BNSF claims "the trial court found the jurors made a premature verdict decision by delving into the jurors' thought process about their verdict choice, then speculating about when they reached that decision in their mind with finality." Second, BNSF argues the district court's finding is not supported by substantial competent evidence. In particular, "the trial court erroneously found not only that these jurors spoke these words, but also concluded that *the jurors 'made up their mind' concerning their final verdict decision and that their decision was in favor of BNSF*."

In response, Vallejo counters that no Kansas case has ever construed K.S.A. 60-441 as prohibiting a finding that jurors made up their minds about a verdict for the reason that such a finding would invade their mental processes. As to BNSF's second argument that there was insufficient evidence regarding the meaning of the words the two jurors said, Vallejo asserts the context in which the words were spoken establishes that the jurors had prejudged their verdict and their verdict was for BNSF.

As previously mentioned, in a motion for new trial based on jury misconduct, the evidence a party may present is statutorily limited. Under K.S.A. 60-444(a), a juror may testify as a witness "to conditions or occurrences either within or outside of the jury room

12

having a material bearing on the validity of the verdict or the indictment, except as expressly limited by K.S.A. 60-441." K.S.A. 60-441 prevents courts from receiving evidence used to "show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined."

Our Supreme Court has explained the rationale for K.S.A. 60-441:

"Public policy forbids the questioning of a juror on the mental processes used in reaching a verdict because there is no possible way to test the truth or veracity of the answers. This policy is codified in K.S.A. 60-441, which prevents a court from considering any evidence that attempts to show the effect of any statement, conduct, event, or condition upon the mind of a juror as influencing him or her to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined." *Williams*, 288 Kan. 768, Syl. ¶ 13.

Our Supreme Court has clarified what evidence may be considered under K.S.A. 60-444(a) and what evidence must be excluded under K.S.A. 60-441. A verdict may not be impeached by evidence concerning (1) a juror's views or conclusions, (2) the reasons for those views or the factors used in determining those conclusions, or (3) what influences those views or the mental process in reaching such conclusions. *Saucedo v. Winger*, 252 Kan. 718, 728-29, 850 P.2d 908 (1993).

But courts may consider evidence of the physical facts, conditions, or occurrences of juror misconduct which come to the attention of other members of the jury panel which may be verified or denied. *Williams*, 288 Kan. at 799. As a result, evidence of what other jurors said and did may be admissible under K.S.A. 60-444(a). *State v. Cook*, 281 Kan. 961, 977, 135 P.3d 1147 (2006). However, any evidence about what effect the other juror's statement had on the affiant juror's mental processes in reaching the verdict is barred by K.S.A. 60-441. 281 Kan. at 978.

13

BNSF concedes that the district court could consider the allegations that Juror T. and the unknown juror stated that they already made up their minds during the first week of trial. However, BNSF argues the district court violated K.S.A. 60-441 by finding the jurors actually made up their minds *to render a verdict in favor of BNSF* because that finding impermissibly invaded the mental processes of the jurors.

A juror's statement indicating that the juror made up his or her mind before the close of evidence may establish juror misconduct. *Peoples Bank of Pratt v. Integral Ins. Co.*, 251 Kan. 809, 811-12, 840 P.2d 503 (1992). Vallejo cites *Peoples Bank of Pratt* in support of his position. In that case, the district court granted a new trial based on, among other considerations, comments made by a juror during trial that she had made up her mind. The trial judge referenced "'her comments, obvious bias, and mind set'" and said, "I am not certain, and no one will ever know, how much she tainted the minds of the other jurors, but it was gross misconduct, and cannot be tolerated." 252 Kan at 811. On appeal, our Supreme Court upheld the grant of a new trial based on jury misconduct. 251 Kan. at 812. Unfortunately, the juror's statements, obvious bias, and mind set which formed the basis of the Supreme Court's holding are not memorialized in the court's opinion.

BNSF relies on *State v. Kirkpatrick*, 286 Kan. 329, 184 P.3d 247 (2008). Kirkpatrick was convicted of first-degree murder and, on appeal, contended that jury misconduct necessitated a new trial. Kirkpatrick complained that the district court denied his motion to recall the jury to present evidence of jury misconduct which denied his rights to due process.

Kirkpatrick's motion included an affidavit from an individual, Mr. Thompson, that

"stated that juror K.D., while visiting her place of employment during a break in the trial, made comments about the trial. According to Thompson, K.D. stated that 'she did not know why everyone was wasting their time and that he was guilty.' Thompson believed

14

K.D.'s statements were made in a 'somewhat joking manner' and were an explanation as to why she was at work." 286 Kan. at 351.

The district court, acknowledging that Kirkpatrick raised "'a very serious issue,'" ruled that the defendant had not raised

"'substantial evidence that jury misconduct related to a material issue in dispute in this case; and while the conduct of the juror is not to be condoned, it's reprehensible, it's outside the admonition that the Court gave the jurors every time that they went into adjournment, it is still not sufficient to raise . . . it to a point where we would allow the juror to be recalled in this case and questioned on the matter. So the motion to recall the juror is overruled.'" 286 Kan. at 352.

Of particular relevance to this appeal, the district court explained:

"The affidavit in this case . . . simply says that the juror, who had heard significant evidence by that time, had formed while arguably a preliminary conclusion as to the guilt of the defendant, does not say what view that juror had as the evidence later was presented in the next day and a half . . . and whether that made a difference to the juror or not we don't know, and to grant the defendant's motion would be to allow *the mental processes of that juror to be put into question*.'" (Emphasis added.) 286 Kan. at 352.

Our Supreme Court, citing K.S.A. 60-441, affirmed the district court's ruling observing "the district court correctly stated that jurors' mental processes are protected." 286 Kan. at 352. As a consequence, Kansas statutes provided that "even if K.D. and the jury had been recalled by the district court, they would have only been able to testify regarding extrinsic matters of physical facts, or occurrences of misconduct, such as K.D.'s comments made at her workplace." 286 Kan. at 353. The Supreme Court also agreed with the district court's reason for its ruling: "Nothing in the affidavit suggested that K.D.'s opinion was final. As the district court noted, questions of the influence of further evidence would not be allowed." 286 Kan. at 355.

15

In its opinion, the *Kirkpatrick* court cited with approval *State v. Allen*, 4 Kan. App. 2d 534, 609 P.2d 219 (1980). In *Allen*, the defendant sought a new trial based on juror misconduct. The misconduct was by Mr. Baker, the jury foreman, who during a break in the trial, while running errands, spoke about the trial to three persons. To the first person, Baker stated that psychiatric testimony was expected later in the day. The recipient of this statement, Mrs. Althouse, testified that "it was her opinion or impression from the conversation that Baker was going to vote guilty; however, he had never told her how he was going to vote." 4 Kan. App. 2d at 536.

To the second person, Lewis Petzold, Baker indicated that he could no longer go along with the insanity defense after hearing the defendant's confession. Baker also commented that "there had to be something more than just one human being wanting to go in and stab another human being and that there had to be some ulterior motive." 4 Kan. App. 2d at 536. To a third individual, Jack Petzold, Baker opined, "'It just looks to me like the man is guilty.'" 4 Kan. App. 2d at 537.

The district court denied the motion for new trial and our court affirmed, finding that even if Baker had made up his mind or formed an opinion, there was no indication that his opinion was based on anything other than the evidence. 4 Kan. App. 2d at 537.

*Kirkpatrick* and *Allen* provide valuable precedent that the district court erred in ruling that juror misconduct warranting a new trial occurred based on the contents of Juror R.'s affidavit. At the outset, it was proper for the district court to consider the evidence that Juror T. and the unknown juror stated they had made up their minds during trial. (It was also permissible to consider Juror T.'s affidavit denying that the comment was made.).

But there are three problems with the district court's finding of juror misconduct. First, it was error to find misconduct based on evidence that, in Juror R.'s opinion, given

16

comments that Juror T. made during deliberations, at the time Juror R. and Juror T. conversed, Juror T.'s mental processes were such that she had prematurely decided to render a verdict for BNSF. Juror R.'s affidavit opining about what Juror T. was thinking about when she made the statement dealt with that juror's mental processes which is not allowed under K.S.A. 60-441.

Second, even if admissible under K.S.A. 60-441, Juror R.'s testimony was pure speculation and without a basis in fact. During the conversation, Juror T. never indicated that she had made up her mind about the verdict and even if she had, she did not state whether she would favor Vallejo or BNSF with her verdict. Similarly, it was also error for the district court to find misconduct without any evidence of what the unknown juror made up his mind about and, assuming it related to his verdict, whether he favored Vallejo or BNSF.

Affidavits and declarations filed in connection with a motion for new trial "are seldom in the unprompted wording of the parties, but rather the products of our adversarial system." *Jones v. Sigg*, 261 Kan. 614, 619, 930 P.2d 1077 (1997). These filings must be "*sufficiently detailed* to demonstrate just what the jurors did to determine whether their actions could constitute misconduct." (Emphasis added.) *Butler v. HCA Health Svcs. of Kansas, Inc.*, 27 Kan. App. 2d 403, 409, 6 P.3d 871 (1999). Quite simply, Juror R.'s speculative and conclusory affidavit does not provide substantial competent evidence that Juror T. or the unknown juror had prematurely made up their minds favoring BNSF with their verdict.

We pause to note that in Vallejo's filings regarding his motion for new trial, he asked the district court to recall the jury if the district court found the two declarations were insufficient to establish juror misconduct. At the hearing, Vallejo's request to recall the jury was briefly discussed, with the district judge ruling:

17

"I don't think it's necessary to have these people come in and testify. They filled out an affidavit. I don't really have any reason to think that they would say anything much differently. And although as [Vallejo's counsel] said, I might be able to evaluate their credibility and see them eye to eye, it really comes down to if they all testified consistent with their affidavit[.] I still have to weigh the substance of what they were going to say anyway. I don't think there's any utility—they all signed these. It's not—I don't think having them come in is appropriate."

Neither Vallejo nor BNSF objected to the district court's ruling. Moreover, on appeal, neither party has claimed error in the district court's denial of Vallejo's request to recall the jury. Consequently, in our review of this issue we only have the admissible evidence contained within the four corners of the four sworn documents upon which to base our review. We are left to question whether additional evidence would have been developed if one or more jurors had been recalled to testify about this issue.

Third, assuming there was substantial competent evidence that the two jurors engaged in misconduct, "[n]ot every violation of the rule that jurors must refrain from forming or expressing opinions about the case until the case is submitted to the jury for deliberation is such prejudicial misconduct that it requires a new trial." *State v. Cady*, 248 Kan. 743, 757, 811 P.2d 1130 (1991). Indeed, it is well established that "[j]ury misconduct will not justify the granting of a new trial unless the misconduct is shown to have substantially prejudiced a party's rights." *Williams*, 288 Kan. at 802. The party claiming prejudice from alleged jury misconduct has the burden to establish that prejudice. 288 Kan. at 803.

BNSF claims the district court abused its discretion by granting a new trial when there was no substantial competent evidence to show that if juror misconduct occurred it substantially prejudiced Vallejo's rights. Vallejo counters by conceding that "the trial court, in announcing its ruling in open court, did not specifically indicate a finding of 'prejudice' or 'substantial prejudice' to Vallejo." However, Vallejo argues regarding all the

18

alleged instances of misconduct, "It is uncertain how much these two jurors tainted the minds of the other jurors, but it was gross misconduct, and it cannot be tolerated."

We are persuaded that BNSF has the better argument regarding whether the conduct of Juror T. and the unknown juror substantially prejudiced Vallejo. In both *Kirkpatrick* and *Allen*, the Kansas appellate courts did not find actionable juror misconduct even though—unlike the case on appeal—there was evidence that the offending jurors had made up their minds to render verdicts of guilty for the State in a criminal proceeding. Moreover, as in *Kirkpatrick*—assuming the comments made by the two jurors related to having decided on a verdict for BNSF—there was no admissible evidence to show that the jurors' premature views of the evidence remained unchanged during the next several days of trial prior to deliberations. Additionally, as in *Allen*—and once again assuming the comments made by both jurors related to having decided on a verdict for BNSF—there is no suggestion that either juror based their premature opinions on anything other than the trial evidence.

All things considered, we conclude that admissible evidence contained in Juror R.'s affidavit only showed that Juror T. and the unknown juror each made a statement during a break in the trial that they had made up their minds. This fact alone does not constitute substantial competent evidence that the jurors engaged in misconduct that substantially prejudiced Vallejo's rights. See *Williams*, 288 Kan. at 802. Accordingly, the district court made an error of law by ordering a new trial based on evidence precluded by K.S.A. 60-441. Moreover, there was not substantial competent evidence to show that the two jurors engaged in juror misconduct that substantially prejudiced Vallejo's rights.

*Substitution of Work Experience for Trial Evidence*

BNSF contends the district court abused its discretion in finding that Juror H. substituted her own work experiences for the evidence at trial. First, BNSF argues the

district court erred because the evidence supporting this finding could not be considered under K.S.A. 60-441. Second, the railroad asserts that the finding that Juror H. substituted her work experience for the trial evidence was not supported by substantial competent evidence.

In response, Vallejo does not favor us with caselaw precedent but argues that Juror R. and Juror F. "did not speculate about [Juror H.'s] mental processes during deliberations; they recited what she actually said in the jury room." In support, Vallejo mentions Juror R.'s assertion that Juror H. "'[i]nstead of focusing on the evidence and testimony introduced in this case, she constantly focused on how her company works. . . .'"

In his motion for new trial, Vallejo presented the affidavits of Juror R. and Juror F. as evidence that Juror H. had engaged in misconduct.

In her declaration, Juror R. stated:

"After both parties had put on their evidence and we were deliberating in the jury room, [Juror H.] argued very strongly and persistently throughout deliberations in favor of the railroad. Instead of focusing on the evidence and testimony introduced in this case, she constantly focused on how her company works, and made it clear that she was basing her decision almost entirely on her company's behavior instead of the evidence about the railroad's behavior. Among other things, [when] discussing whether the railroad had failed to provide Mr. Vallejo with the proper tools and had ignored his and his lead man's request for proper tools, [Juror H.] said, 'At my plant, we don't do this.' 'There is no way in the world this would happen.' 'I know because at my plant that wouldn't happen.' 'I cannot believe the railroad did that, and I don't believe it happened.'"

Juror F.'s declaration stated that Juror H. focused on her work experiences during deliberations, stating:

20

"In explaining her vote, [Juror H.] focused on how things worked at her company, and she said that was why she refused to believe the testimony of Mr. Vallejo and all the other car department employees regarding unavailable and inadequate tools, and supervisors ignoring requests for tools and still expecting the workers to get the job done."

At the hearing, BNSF offered as evidence the affidavit of Juror H. which stated, "I specifically deny making the comments that [Juror R.] attributes to me in Paragraphs 6 and 7 of her declaration, and I reiterate my statement that I reviewed all testimony and other evidence before voting, basing my vote solely on how I viewed the testimony and evidence." Paragraph 6 of Juror R.'s declaration, as did paragraph 7 of Juror F.'s affidavit, dealt with the claim that Juror H. substituted her own work experiences in place of the trial evidence.

As previously discussed, evidence of what other jurors said and did may be admissible under K.S.A. 60-444(a). This is because K.S.A. 60-441 and K.S.A. 60-444(a) permit courts to consider evidence of the physical facts, conditions, or occurrences of juror misconduct which comes to the attention of other members of the jury panel which may be verified or denied. *Williams*, 288 Kan. at 797.

While evidence of other jurors' statements may be admissible, our court has noted that "not all statements made by other jurors are admissible under K.S.A. 60-444(a)." *State v. Johnson*, 40 Kan. App. 2d 1059, 1066, 198 P.3d 769 (2008). Evidence of other jurors' statements that relate to matters that are an intrinsic part of the verdict are inadmissible. See *Brown v. Hardin*, 197 Kan. 517, 523, 419 P.2d 912 (1966). For example, evidence of a juror's comment on the weight that should be given to testimony is inadmissible under K.S.A. 60-441. 197 Kan. at 523. Statements that involve other juror's opinions are also inadmissible because they are evidence of mental processes. *Johnson*, 40 Kan. App. 2d at 1066.

21

In *Brown*, our Supreme Court explained:

"Human nature being what it is, if every wild expression of opinion made in a jury room in the throes of hammering out a verdict could be made the basis for retrial jury verdicts could seldom be preserved. Such inquiries into the validity of jury verdicts, based on mental processes of the jurors, are foreclosed in Kansas, formerly by case law, now by statute. [Citations omitted.]" 197 Kan. at 523.

In *Brown*, the plaintiff claimed the jury committed misconduct and presented affidavits which alleged that other jurors discredited a witness and paid no attention to his testimony because they believed he was "'bought off.'" 197 Kan. at 523. The Supreme Court determined that the affidavits could not be considered because they related to the mental processes of jurors and exhibited no extrinsic misconduct. 197 Kan. at 523.

The affidavits by Juror R. and Juror F. contain evidence that is precluded by K.S.A. 60-441. Similar to *Brown*, Juror H.'s comments in this case related to the weight that she assigned to Vallejo's testimony and the testimony of other witnesses. Juror H.'s belief that Vallejo's version of the facts did not occur based on her work experiences was her opinion and is evidence of her mental processes used to reach a conclusion in the case. The evidence of Juror H.'s statements about how her work experiences may have influenced her decision, therefore, was inadmissible under K.S.A. 60-441.

As a result, the district court made an error of law by considering this evidence and finding that Juror H. substituted her work experience for the trial evidence. Additionally, absent the inadmissible statements made in the declaration, there was not substantial competent evidence to show that the two jurors engaged in juror misconduct that substantially prejudiced Vallejo's rights.

22

*Statement That Vallejo Injured Himself At Home*

BNSF next contends the district court erred in finding that Juror H. committed misconduct by suggesting that, rather than sustaining a workplace injury, Vallejo injured himself at home. First, BNSF argues the district court erred because the evidence in the declarations supporting this finding could not be considered under K.S.A. 60-441. Second, BNSF argues the expert medical evidence at trial supported Juror H.'s suggestion that Vallejo injured himself at home.

In response, Vallejo argues that the contents of the two declarations relating to this issue are admissible evidence because they contain statements made to other jurors during deliberations and thus describe events rather than mental processes.

Regarding this issue, Juror R.'s affidavit stated that during jury deliberations, Juror H. "made the assertion, even though there had been no evidence to support it, that Mr. Vallejo injured himself at home and he's just trying to get money from BNSF for something he did at home." Juror F.'s declaration simply stated, "I also recall [Juror H.] suggesting that Mr. Vallejo actually hurt himself at home." BNSF countered with Juror H.'s affidavit in which she specifically denied making the remark.

Like Juror H.'s statements about her work experience influencing her decision, her statement suggesting that Vallejo injured himself at home is not proper evidence to establish jury misconduct under K.S.A. 60-441. Kansas courts have held that comparable juror statements may not support a finding of juror misconduct because they evidence the juror's mental processes. For example, in *Howell v. Calvert*, 268 Kan. 698, 704, 1 P.3d 310 (2000), our Supreme Court determined that a juror's statement that a plaintiff was a "'faker'" and this would not be another "'McDonald['s] case'" could not support a finding of jury misconduct. 268 Kan. at 703-04. Relying on K.S.A. 60-441, the court determined that "if a juror or jurors concluded that [plaintiff] was a 'faker' and consequently awarded

23

her less damages, we cannot find jury misconduct. We may not invade the thought processes of the jury to test the validity of a verdict." 268 Kan. at 704.

Similarly, in *State v. Martinez*, 288 Kan. 443, 204 P.3d 601 (2009), two jurors complained about a third juror who they thought was mentally incompetent to make an informed decision in the case involving a charge of first-degree murder. The presiding juror informed the court that during deliberations the third juror explained that the defendant "'was in a gang and gangs are wrong, I'm going to convict him because he's in a gang.'" 288 Kan. at 447. Our Supreme Court determined that the third juror's statement did not show that he disregarded the evidence or made up his mind about guilt prior to hearing the evidence. 288 Kan. at 448. Instead, the court determined the complaints could not be considered under K.S.A. 60-441 because they "went to the third juror's thought processes." 288 Kan. at 448-49.

Finally, in *State v. Bell*, No. 111,265, 2015 WL 2414344 (Kan. App. 2015) (unpublished opinion), the defendant filed a motion to recall the jury and a motion for mistrial after one juror reported that a second juror claimed the defendant traveled to a further Wal-Mart to shop because she had been banned from the closer Wal-Mart. At a hearing, the second juror said that if he made the statement, it would have been speculation because he did not personally know if the defendant was banned from any Wal-Mart. Our court determined that the juror's comment could not be considered under K.S.A. 60-441, stating:

> "In this case, [the second juror] testified he did not know personally Bell, had no specific knowledge regarding whether Bell was banned from another Wal-Mart, and his statement was a mere speculation and not a fact. [The first juror's] statements regarding [the second juror's] alleged statements should be excluded as evidence of mental processes because the statements expressed a mere opinion." 2015 WL 2414344, at *4.

24

As in *Martinez*, Juror H.'s suggestion that Vallejo injured himself at home does not establish that she failed to consider the evidence or had prematurely made up her mind before hearing all the evidence. As Juror H.'s statements about her work experiences show, she considered the evidence but determined some of it was not credible. Moreover, as BNSF points out, there was expert medical testimony from Vallejo's treating physician, Dr. David Ebelke, that in the field of orthopedic medicine "you could say is anything in the entire world a potential cause of a disk herniation and I would say yes. If you ask me if nothing could cause a disk herniation, I would have to say yes." A reasonable inference from this expert medical testimony is that Vallejo may have sustained his back injury in ways other than at the workplace, including his home.

Juror H.'s suggestion that Vallejo injured himself at home was an opinion and evidence of her mental processes during jury deliberations. As a result, the district court erred as a matter of law by considering this evidence despite the prohibitions set forth in K.S.A. 60-441.

We conclude the district court erred by finding that Juror H. committed misconduct by suggesting that Vallejo injured himself at home rather than at the workplace. The consideration of this evidence was not permitted under K.S.A. 60-441 and, as a result, was an error of law. Moreover, there was not substantial competent evidence to show that Juror H. engaged in juror misconduct that substantially prejudiced Vallejo's rights.

CONCLUSION

BNSF has raised two additional claims of error regarding the district court's order granting a new trial based on jury misconduct. These include relying on the declarations to find juror misconduct when it was not apparent from the verdict itself that the jury had misunderstood or disregarded the jury instructions and considering the declarations as

evidence given that they were inadmissible hearsay. Given our holding as to BNSF's primary claims of error, we decline to consider these additional issues.

Finally, as an alternative argument, BNSF contends the district court erred by awarding Vallejo postjudgment interest under K.S.A. 16-204 after the verdict for Vallejo in the fourth jury trial. BNSF claims that the issue of postjudgment interest is governed by federal law, not state law and, thus, the federal postjudgment interest rate should apply. Given our holding, this issue is moot.

The district court's order granting Vallejo a new trial is reversed. The case is remanded to the district court with directions to reinstate the verdict of the jury in the second trial.

* * * *

ATCHESON, J., concurring: Given how Plaintiff Luis Vallejo and Defendant BNSF Railway Company have framed the juror misconduct issue for our review in this case for benefits under the Federal Employers Liability Act, I concur with the majority in finding the Wyandotte County District Court erred in reversing the verdict for the railroad. And I agree the appropriate remedy is a remand to the district court with directions to reinstate the verdict. But I take a narrower approach to assessing the conflicting affidavits from Juror R. and Juror T.

On appeal, as the majority points out, the parties are satisfied to have us decide the juror misconduct issue up or down based on the affidavits the district court relied on. Neither Vallejo nor the railroad secondarily suggests alternative relief calling for a remand to the district court for further substantive proceedings. In other words, they stake their legal positions on the evidentiary record we now have in front of us. Their framing of the issue necessarily shapes the outcome we reach.

26

Given those boundaries, I agree that what Juror H. purportedly said during the jury deliberations goes to her mental processes in arriving at a verdict and is off-limits under K.S.A. 60-441. In support of his posttrial motion to set aside the verdict for the railroad, Vallejo submitted affidavits from Juror R. and Juror F. that attribute comments to Juror H. in the deliberations. The railroad submitted a countering affidavit from Juror H. disclaiming the statements attributed to her. The conflict in the accounts from Juror R. and Juror F. and from Juror H. has no legal import. Even if Juror H. said the things attributed to her during deliberations, Vallejo's offer of them entails an impermissible attempt to impeach the verdict. His effort to upend the verdict based on Juror H. fails.[*]

[*]Technically, the submissions from Juror R. and Juror F. were declarations under penalty of perjury rather than affidavits, but they have the same legal effect as affidavits under Kansas law. See K.S.A. 53-601. As a matter of convenience and convention, I refer to all of the signed juror statements as affidavits.

In her affidavit, Juror R. also attributes statements to Juror T. and to an unidentified male juror made during breaks in the trial while the parties were still presenting evidence and before the deliberations had begun. Those statements should be viewed differently. Juror R. avers Juror T. approached her during a recess relatively early in the trial and announced, "'I've already made up my mind.'" Juror R. states she immediately withdrew from Juror T. and had no further discussion with her then. Juror R. recounts that Juror T. voted for the railroad throughout the jury deliberations. The railroad submitted a countering affidavit from Juror T. in which she categorically denies making that statement or anything like it to Juror R. In this respect, the two affidavits clearly conflict and cannot be reconciled. Either Juror R. or Juror T. is mistaken. (That assumes Juror R. has correctly named the juror making the statement. Given other information in the affidavits, mistaken identity seems unlikely.)

In her affidavit, Juror R. states that during another trial recess, she overheard a male juror she could not identify say he had already made up his mind. But Juror R. does

27

not attribute a direct quote to the juror, so the affidavit reflects a paraphrase and Juror R.'s conclusion as to what the other juror meant. Not surprisingly, the railroad offered no countering affidavit from the unidentified juror.

So what are we to make of the warring affidavits? First, of course, Vallejo bore the burden of proving juror misconduct. *Duncan v. West Wichita Family Physicians, P.A.*, 43 Kan. App. 2d 111, 121, 221 P.3d 630 (2010) (burden of proof on party alleging prejudice from juror misconduct). With respect to the unidentified male juror, Juror R.'s affidavit is too indefinite to satisfy Vallejo's burden, since we can't tell what the juror actually said. We have only a conclusory paraphrase or opinion from Juror R. That's not good enough. By analogy, this court has recognized vague or conclusory representations in an affidavit fail to create a genuine dispute over material facts necessary to defeat a motion for summary judgment. See *RAMA Operating Co. v. Barker*, 47 Kan. App. 2d 1020, 1031-32, 286 P.3d 1138 (2012); *Somrak v. Junghans Agency, Inc.*, No. 107,973, 2013 WL 5422319, at *2 (Kan. App. 2013) (unpublished opinion). A fortiori, those representations cannot satisfy the evidentiary obligation of a party bearing the burden of proof on a point. See *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 774 (9th Cir. 2017).

As the majority acknowledges, a juror who makes up his or her mind on a verdict before hearing all of the evidence has engaged in misconduct. And Juror R.'s affidavit establishes a prima facie case for misconduct on Juror T.'s part. I don't share the majority's willingness to loosely parse the statement attributed to Juror T. for possible innocuous meanings wholly unconnected to the trial and the jurors' role as fact-finders. The circumstances portrayed in Juror R.'s affidavit are otherwise. How Juror T. voted in the jury room (in contrast to the actual or stated deliberative considerations bearing on her vote) may be taken into account to give meaning to the statement she ostensibly made to Juror R. beforehand. At the very least, I would certainly assume that much to decide the appeal.

But all of that simply brings me back to the conflict. Juror R. says without qualification that Juror T. made a specific statement indicative of misconduct, and Juror T. says without qualification she did not make the statement. We have no other evidence bearing on this disputed fact. Neither did the district court. The record then presents evidence that for all intents and purposes is equally balanced on whether Juror T. made the critical statement. And Vallejo, as the party bearing the burden of proof, loses if the evidence is in equipoise.

We presumably should review the district court's decision to credit Juror R.'s affidavit and, therefore, to grant Vallejo's motion for a new trial for an abuse of discretion. *King v. Casey's General Stores, Inc.*, 57 Kan. App. 2d 392, 400, 450 P.3d 834 (2019) (district court ruling on motion for new trial reviewed for abuse of discretion). Although the standard is exceptionally deferential, the district court overstepped in this circumstance. A district court may be said to have abused its discretion if the result it reaches is "arbitrary, fanciful, or unreasonable." *Unruh v. Purina Mills*, 289 Kan. 1185, 1202, 221 P.3d 1130 (2009); see *Cooper Clark Foundation v. Oxy USA, Inc.*, 58 Kan. App. 2d 335, 342, 469 P.3d 1266 (2020) (district court's abuse of discretion may be founded on "arbitrary or unreasonable" decision). Here, there is no logical or legal basis in the record to prefer Juror R.'s affidavit and its averments over Juror T.'s affidavit and its contrary averments. The district court never provided some explanation for its choice grounded in the record evidence. In short, the decision was arbitrary. See *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, Syl. ¶ 2, 241 P.3d 15 (2010) (arbitrary means "without adequate determining principles"); see also Webster's New World College Dictionary 73 (5th ed. 2016) (defining "arbitrary" as "based on one's . . . whim").

In light of what has been presented to us, we have come to the proper conclusion. I, therefore, concur in the decision to reverse the district court's ruling granting Vallejo a new trial and to remand with directions to reinstate the verdict for the railroad.